**Affirmed and Opinion filed December 19, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00514-CR

**ANDRE JAMAL SLOAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1347009**

## O P I N I O N

A jury found appellant Andre Jamal Sloan guilty of capital murder, and the trial court sentenced appellant to a mandatory punishment of life imprisonment. Appellant challenges his conviction on the ground that the trial court erroneously denied his motion to suppress his recorded statement. Appellant challenges his sentence on the ground that a mandatory punishment of life imprisonment is cruel

and unusual in violation of the Eighth Amendment to the United States Constitution.  We affirm.

## BACKGROUND

In 1990, Wistong Javier Potes and his wife Tamara Potes were attacked in their house.  Wistong was shot in the head, causing his death.  Tamara was raped by multiple men and also shot in the head, but she survived.  At the hospital, a rape kit was used to collect evidence, and her nightgown was taken into evidence.  A year later, she was shot and killed in an unrelated incident.  The investigation of Wistong's murder went cold.

In 1993, a jury convicted appellant of an unrelated capital murder and assessed punishment at life imprisonment in the Texas Department of Criminal Justice.  This court affirmed his conviction on direct appeal.  *See Sloan v. State*, No. 14-93-00891-CR, 1997 WL 110000 (Tex. App.—Houston [14th Dist.] Mar. 13, 1997, pet. ref'd) (not designated for publication).

In 2010, Sergeants Eric Clegg and Michael Holtke were working in the Cold Case Unit of the Homicide Division for the Harris County Sheriff's Office.  The Sheriff's Office submitted the physical evidence stored in the Potes case, including the nightgown and rape kit, to the Harris County Institute of Forensic Sciences (HCIFS) for forensic testing.  The HCIFS notified the Sheriff's Office of a "DNA CODIS hit," meaning that DNA from the rape kit or nightgown matched the DNA from a criminal defendant stored in a state database.  The DNA matched to appellant.

The sergeants obtained a search warrant for appellant's DNA and a bench warrant to have appellant transferred from prison to the Harris County jail.  On September 3, 2010, appellant was brought to the Sheriff's Office for an interview

and the taking of his DNA. An audio-visual recording was made. Clegg told appellant that he was in custody, and Clegg read *Miranda*[1] and Article 38.22[2] warnings to appellant. Appellant waived his rights and agreed to be interviewed. Appellant denied involvement in the Potes case. Holtke gave appellant a business card at the conclusion of the interrogation.

On Labor Day, September 6, a clerk for the Cold Case Unit, Rebecca Sweetman, received a phone call from a man identifying himself as Andre Sloan. The man asked for Holtke. Sweetman notified Clegg, and the sergeants went to the Harris County jail on September 8. Jailers escorted appellant to the inmate processing center where the sergeants and appellant went to a small office used by supervisors at the jail. Appellant was brought to the sergeants in handcuffs, but the handcuffs were removed. The sergeants were not wearing firearms. The sergeants asked appellant if he wanted to see them, and he said that he did. Appellant told the sergeants that he wanted to speak with them to "get some closure"; appellant said he had prayed about it and wanted to help the sergeants get the information they needed. The sergeants asked some questions, and the interview lasted about twenty minutes. Holtke recorded it on a hidden audio recorder. The sergeants did not mention the *Miranda* or Article 38.22 warnings or tell appellant that he was free to leave.

Appellant was indicted for the capital murder of Wistong Potes, and he moved to suppress his two recorded statements. The trial court denied the motion after a hearing,[3] and the jury eventually heard redacted versions of appellant's two

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Tex. Code Crim. Proc. Ann. art. 38.22.

[3] Clegg, Holtke, and Sweetman were the only witnesses called at the suppression hearing, and appellant's recorded statements were played for the court. The historical facts discussed above are primarily drawn from the testimony at the hearing and the recorded statements.

recorded statements—State's Exhibits 1A and 2A. The jury found appellant guilty of capital murder. Because the State did not seek the death penalty, appellant's punishment was automatically assessed at life imprisonment.[4] The trial court granted the State's motion to cumulate the sentence with appellant's prior convictions for burglary and capital murder.

On appeal, we sustained appellant's first issue requesting abatement of the appeal so the trial court could file findings of fact and conclusions of law. The trial court filed its findings and conclusions, determining that appellant gave the second statement voluntarily without coercion, and he was not in custody for purposes of *Miranda* and Article 38.22. We reinstated the appeal and now address appellant's remaining two issues.

### MOTION TO SUPPRESS

In his second issue, appellant contends the trial court erred by denying his motion to suppress State's Exhibit 2A—appellant's second recorded statement—because (1) he was in custody and being interrogated without police obtaining a second *Miranda* waiver; and (2) his confession was involuntary due to police overreaching. We address each contention in turn.

### I.    Custodial Interrogation

*Miranda* warnings and Article 38.22 requirements are mandatory only when there is a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). The meaning of "custody" is the same for purposes of *Miranda* and Article 38.22. *Id.* The defendant bears the initial burden to prove that a statement was the product of a custodial interrogation. *Id.* The State has no

---

[4] The Penal Code was amended in 2005 to mandate punishment at "life without parole," rather than simply life imprisonment. *See* Act of Jun 17, 2005, 79th Leg., R.S., ch. 787, 2005 Tex. Gen. Laws 2705, 2705.

burden to show compliance with *Miranda* unless and until the record as a whole "clearly establishes" that the defendant's statement was the product of a custodial interrogation. *Id.* (citing *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)).

"In reviewing a trial court's ruling on a *Miranda*-violation claim, an appellate court conducts a bifurcated review: it affords almost total deference to the trial judge's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor." *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). The custody issue is reviewed de novo when, as here, questions of historical fact do not turn on the credibility and demeanor of the witnesses. *See Herrera*, 241 S.W.3d at 527. We view the evidence presented on a motion to suppress in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

Generally, a person is considered to be in custody for purposes of *Miranda* and Article 38.22 when: (1) the person is formally arrested; or (2) the person's freedom of movement is restrained to the degree associated with a formal arrest. *Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 677 (Tex. Crim. App. 2009). However, for a person who is already an inmate of a prison or jail, "the question turns on whether, under the facts and circumstances of the case, 'a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave.'" *Id.* at 678 (quoting *Miranda*, 384 U.S. at 532). A prison inmate, like appellant, is not in custody per se. *See id.* Factors used to determine whether a prison inmate is in custody include: (1) the language used to summon the inmate; (2) the physical surroundings of the interrogation; (3) the extent to

5

which the inmate is confronted with evidence of his or her guilt; (4) the additional pressure exerted to detain the inmate or the change in the surroundings of the inmate which results in an added imposition on the inmate's freedom of movement; and (5) the inmate's freedom to leave the scene and the purpose, place, and length of the questioning. *Herrera*, 241 S.W.3d at 532.

The United States Supreme Court recently identified an example of an inmate interrogation that was not conducted in custody for purposes of *Miranda*. *See Howe v. Fields*, 132 S. Ct. 1181 (2012). The facts weighing in favor of custody were that (1) the inmate did not invite the interview, *i.e.*, he was summoned; (2) the interview was lengthy, lasting five to seven hours; (3) the officers were armed; (4) one of the officers used a "very sharp tone;" and (5) the inmate was not advised that he was free to decline to speak with the officers. *See id.* at 1192–93. The facts weighing against a finding of custody included that (1) the inmate was told that he could leave and go back to his cell whenever he wanted; (2) the inmate was not physically restrained or threatened; (3) the interview took place in a well-lit, average-sized conference room; (4) the inmate was offered food and water; and (5) the door to the room was sometimes left open. *Id.* at 1193. The Court held that the inmate was not in custody under the totality of the circumstances, and the Court found it especially important that the inmate was told he was free to end the questioning and return to his cell. *See id.* at 1194.

We evaluate the facts of appellant's interrogation in light of the factors identified above, and we are guided by the Supreme Court's holding in *Howe*. First, the trial court found that appellant initiated the second interview by calling the Sheriff's Office and that appellant confirmed he had called asking to speak with the sergeants and wanted to provide additional information. Although the sergeants had "summoned" appellant from prison to the Harris County jail, the

6

sergeants did not summon appellant to this interview. Appellant summoned the sergeants to the jail by asking to speak with them. This fact in particular weighs against a finding of custody. *Cf. id.* at 1192–93 (facts supporting custody included that the inmate did not invite the interview). As appellant said at the beginning of the interview, the purpose was for him to "get some closure"; appellant said he had prayed about it and wanted to help the sergeants get the information they needed.

Next, there is little evidence about the physical surroundings of the interview, other than it was conducted in an office at the jail sometimes used by supervisors. There is no evidence in this record that the room was dimly lit, small in size, or had any other characteristic that would favor a finding of custody. *See id.* at 1193. The absence of such evidence militates against a finding of custody. *See Herrera*, 241 S.W.3d at 532 (inmate failed to meet burden of proof on custody issue).

During the second interview, the sergeants did not confront appellant with any evidence of his guilt, and the recording supports the trial court's finding that the sergeants asked minimal questions. These facts weigh against a finding of custody. One of the sergeants can be heard on the recording raising his voice, which could conceivably weigh in favor of a finding of custody. *See Howes*, 132 S. Ct. at 1193 (officer's use of a "very sharp tone" suggested custody, but this fact was offset by other evidence militating against a finding of custody). However, this dialogue was brief.

The sergeants placed no additional pressures on appellant—in fact, the sergeants were not wearing their firearms, and appellant's handcuffs were removed for the interview. These facts weigh against a finding of custody. *Cf. Howe*, 132 S. Ct. at 1193 (officers wearing firearms would support finding of custody); *Campbell v. State*, 325 S.W.3d 223, 236 (Tex. App.—Fort Worth 2010, no pet.)

7

(custody established when the defendant was placed in handcuffs in light of all the circumstances).

Although the sergeants did not tell appellant he was free to leave, there is no evidence in this record that the sergeants told appellant he had to answer their questions or give a statement. It is less important—compared to *Howe*—that the sergeants did not tell appellant he could leave because *appellant* initiated the interview himself. A reasonable person in appellant's position would understand that he was talking to the sergeants because of his own request to do so, and he could have terminated the interview at his own request. Finally, the entire interview lasted less than twenty minutes, and appellant did most of the talking with only minimal questioning from the sergeants. These facts weigh against a finding of custody.

Based on these facts and the absence of any other evidence clearly establishing that a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave, we hold that appellant's second recorded statement was not the product of a custodial interrogation. Appellant cites no factually analogous case holding otherwise.[5]

---

[5] Appellant cites facts related to the first interrogation, which occurred five days prior to the second interrogation. The first interrogation lasted longer and was conducted in a small room at a different location where appellant was confronted with evidence of his guilt. Of course, the sergeants had read appellant his *Miranda* and statutory rights and obtained a waiver of those rights before the first interrogation. Given the lapse of time, there is no reason to believe the coercive nature of that interrogation would have carried forward to a later interrogation instigated by appellant. To the extent it would, we believe the earlier *Miranda* waiver similarly would have carried forward to the second interrogation conducted by the same officers on the same subject matter. *See Jones v. State*, 119 S.W.3d 766, 773 n.13 (Tex. Crim. App. 2003) (noting that "'the mere passage of time' does not, by itself, automatically obviate prior *Miranda* warnings," and suggesting that a subsequent interrogation occurring several days after the receipt of *Miranda* warnings would have been constitutional if the interrogation had been conducted by the same officer regarding the same crime; collecting cases).

## II.     Police Overreaching

Appellant also contends his confession was involuntary due to "police overreaching"—namely, "(1) the inherently coercive circumstances, and (2) the failure of the officers to disclose that the appellant's statement was being recorded secretly."

Appellant did not mention police overreaching in his motion to suppress or during the suppression hearing. He made no specific argument for suppression other than the failure of the sergeants to repeat the *Miranda* and Article 38.22 warnings to appellant before the second interview and obtain a second waiver. Because appellant did not raise this distinct issue in the trial court, no error has been preserved for our review. *See, e.g.*, *Resendez v. State*, 306 S.W.3d 308, 315 (Tex. Crim. App. 2009) (specific suppression argument not raised in trial court was not preserved for appellate review); *see also* Tex. R. App. P. 33.1.

Appellant's second issue is overruled.

### PUNISHMENT

In his third issue, appellant contends that his mandatory sentence of life imprisonment violated the Eighth Amendment because he was precluded from presenting mitigation evidence. The State contends that appellant failed to preserve any error. We agree with the State.[6]

Appellant failed to preserve error because he did not object or otherwise complain to the trial court about the constitutionality of the sentencing statute that mandated life imprisonment for adult offenders convicted of capital murder. *See*

---

[6] We assume for argument's sake that the case law concerning life without parole sentencing is applicable to appellant because, as he contends, the trial court's order cumulating his two life sentences "created a 'synthetic' sentence of life without parole." We need not approve of that argument to resolve this appeal.

*Karanev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("[A] defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute."); *Wilkerson v. State*, 347 S.W.3d 720, 722, 724 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (no error preserved for facial challenges to the current sentencing statute mandating life imprisonment without parole for an adult offender convicted of capital murder); *see also* Tex. R. App. P. 33.1(a).

Appellant contends he should be excepted from preserving error because any objection would have been futile at the time of sentencing and he now raises a "right not recognized"; he contends the United States Supreme Court "took a new direction" in sentencing law with *Miller v. Alabama*, 132 S. Ct. 2455 (2012), and thus weakened earlier precedent approving of mandatory sentences. We disagree.

Except for fundamental error that appellant does not assert, an objection in the trial court is required to preserve error for appellate review; the "right not recognized" doctrine does not apply. *See Sanchez v. State*, 120 S.W.3d 359, 365, 367 (Tex. Crim. App. 2003) ("[T]his 'right not recognized' doctrine is inconsistent with our current law of error preservation. . . . The 'right not recognized' exception to the contemporaneous-objection rule relates to a kind of fundamental error . . . that *Marin*[7] generally eliminated from our jurisprudence.").

Regardless of *Sanchez*'s general disapproval of the "right not recognized" exception, it would not even apply on the facts of this case. *Miller* announced a rule—mandatory punishment of life without parole for juvenile offenders violates the United States Constitution—that was consistent with earlier Supreme Court precedent. *See Miller*, 132 S. Ct. at 2470 ("Our ruling thus neither overrules nor undermines nor conflicts with *Harmelin*.[8]"); *Rivera v. State*, 381 S.W.3d 710,

---

[7] *Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993).

[8] *Harmelin v. Michigan*, 501 U.S. 957, 994–95 (1991) (holding that the Eighth

714 (Tex. App.—Beaumont 2012, pet. struck) (refusing to apply "right not recognized" exception for an adult offender because *Miller* did not change existing law). Appellant is an adult offender convicted of capital murder, and *Miller*'s holding is limited to juveniles.

Appellant's third issue is overruled.

## CONCLUSION

After abating this appeal for findings of fact and conclusions of law and now overruling appellant's remaining issues, we affirm the trial court's judgment.


/s/          Sharon McCally
             Justice


Panel consists of Chief Justice Frost and Justices McCally and Busby.

Publish — Tex. R. App. P. 47.2(b).

---

Amendment does not prohibit a mandatory sentence of life without parole for an adult convicted of a drug possession crime, without the opportunity to present mitigation evidence).