**Affirmed and Opinion filed August 12, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-01126-CR

## NOEL GALVAN CERNA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 155th District Court
### Austin County, Texas
### Trial Court Cause No. 2009R-0088

## O P I N I O N

Appellant Noel Galvan Cerna appeals his conviction for capital murder and his sentence of life imprisonment without the possibility of parole. He asserts that there is insufficient corroborating evidence tending to connect him with the offense in question. Appellant also argues that the Texas capital-murder-sentencing scheme, under which defendants convicted of capital murder who do not receive the death penalty must be sentenced to life imprisonment without the possibility of

parole, violates the protections provided under both the United States Constitution and the Texas Constitution. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2009, Dr. Jorge Mario Gonzalez was fatally shot at his ranch home in Austin County. Gonzalez's wife—Charleen Gonzalez—testified that appellant began working for the Gonzalezes six months before the murder. She and her husband took appellant out to the ranch to perform work approximately twice a month. They recently had learned a route to the ranch taking the Westpark Tollway, and they had traveled that route with appellant. Typically, after appellant finished working, Charleen would pay him by taking between $600 and $800 in cash from a bank envelope.

On the date of the murder, Dr. Gonzalez and Charleen picked up appellant at his apartment and the three drove together to the ranch. Shortly after they arrived, Charleen noticed a person dressed in black coming around the corner. She screamed, ran into the house, and prompted her husband to retrieve his gun. Dr. Gonzalez went to the closet of the master bedroom located toward the back of the home, retrieved and loaded his gun, and headed toward the kitchen. Meanwhile, Charleen locked herself in the master bathroom and dialed 911. While she was on the phone with emergency services, an individual unsuccessfully tried to enter the bathroom. Charleen testified she heard the individual speak in "a Hispanic dialect." She also saw from the bathroom window two or three masked men run away from the property. Shortly thereafter, Charleen discovered her husband was dead, and appellant was suffering from a gunshot wound.

A police officer responding to the emergency dispatch observed a white pickup truck and a red Honda automobile fleeing the area. As the white pickup

2

truck approached the officer's vehicle, an individual seated in the passenger side fired a shot at the officer. Police officers later determined that appellant's mother's boyfriend owned the white pickup truck and it was used primarily by appellant's brother, Cristobal Galvan Cerna. Appellant's cousin, Misael Santollo, owned the red Honda.

Santollo, who also was charged with Gonzalez's murder, testified pursuant to a plea-bargain agreement that the day before the murder, Santollo, Cristobal, appellant, and appellant's other brother, Moises Galvan Cerna, discussed a plan to rob Dr. Gonzalez. The plan was to go to Gonzalez's ranch property, hold him, duct tape him, and force him to withdraw money from the bank. The parties also planned to hold his pregnant wife and toddler hostage to ensure his cooperation. According to Santollo, appellant suspected Gonzalez might be able to withdraw a few thousand dollars.

Santollo testified that on the morning of the murder, appellant directed the parties to the ranch. He and appellant rode together followed by Cristobal and Moises. They traveled by way of the Westpark Tollway, stopping at a Shell gas station in Houston and a McDonald's restaurant in Sealy. Santollo explained that appellant had informed them that the ranch was equipped with security cameras. Surveillance from the security cameras showed that one camera was moved the morning of the murder and another security camera was moved later. Santollo stated that all four relatives participating in the plan donned sweatshirts, masks, and gloves to conceal their identities. They also carried two guns: an empty .380 and a loaded nine millimeter.

After the men arrived at the ranch, they altered their plan. Santollo drove appellant home so that appellant could arrive at the ranch with the Gonzalezes and pose as a victim. According to Santollo, the parties thought this plan of action

3

would be safer because appellant could inform them if authorities were alerted and also persuade Dr. Gonzalez to acquiesce to the request for money. Accordingly, Santollo drove appellant back to his home and continued communicating with him via phone calls and text messages. Santollo advised that appellant alerted them later that day when he arrived at the ranch with the Gonzalezes.

After the Gonzalezes arrived at the ranch house, Santollo observed Charleen scream and run into the house. He said he attempted to follow her but was confused by the layout of the house. Appellant pointed him in the right direction. After realizing Charleen had called police, Santollo claimed he urged everyone to leave. He said he was running away from the scene when he heard gunshots. According to Santollo, Cristobal later informed him that he had shot the doctor and accidentally killed appellant. Santollo later learned that Cristobal was mistaken about killing appellant and that appellant had survived.

Santollo, Cristobal, Moises, and appellant were arrested and charged by indictment with capital murder. Appellant pleaded "not guilty." Following a trial, the jury found appellant guilty as charged. Appellant received a mandatory sentence of life imprisonment without the possibility of parole. He now challenges his conviction on appeal.

## II. ISSUES AND ANALYSIS

Appellant asserts that there is insufficient corroborating evidence tending to connect appellant with the capital murder of Dr. Gonzalez. Appellant also argues that the Texas statutory capital-murder sentencing scheme violates the cruel-and-unusual-punishment prohibition of the Eighth Amendment to the United States Constitution as well as article I, section 13 of the Texas Constitution.

## A. Sufficiency of Corroborating Evidence under the Accomplice-Witness Rule

Texas Code of Criminal Procedure article 38.14, entitled "Testimony of Accomplice" and commonly known as the accomplice-witness rule provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2014). The accomplice-witness rule expressly provides that "the corroboration is not sufficient if it merely shows the commission of the offense." *Id.* Appellant argues the record contains insufficient corroborating evidence tending to connect him with the capital murder of Dr. Gonzalez.

In the indictment, it was alleged that, in the course of committing or attempting to commit kidnapping, burglary, or robbery, appellant intentionally caused the death of Dr. Gonzalez by shooting him with a firearm. A person commits capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit kidnapping, burglary, or robbery. *See* Tex. Penal Code §§ 19.02(b), 19.03(a) (West 2014). A person may be convicted as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. *See id.* § 7.01(a).

The trial court's instructions to the jury included an instruction on the law of parties under Penal Code section 7.02(a)(2) and the law of conspiracy under Penal Code section 7.02(b). *See id*. § 7.02. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or

5

attempts to aid the other person to commit the offense. *See id*. § 7.02(a) (West 2014). If, in the attempt to carry out a conspiracy to commit kidnapping, burglary, or robbery, capital murder is committed by one of the conspirators, all conspirators are guilty of the capital murder actually committed, though having no intent to commit it, if the capital murder was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *See id*. § 7.02(b).

The accomplice-witness rule is a statutorily imposed review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the offense. *Id*. To meet the requirements of this rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Id*. Rather, the evidence simply must link the defendant in some way to the commission of the offense and show that rational jurors could conclude that this evidence sufficiently tends to connect the defendant to the offense. *Id*. Thus, when there are two permissible views of the evidence, one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense, appellate courts should defer to that view of the evidence chosen by the fact-finder. *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). The issue is not how an appellate court independently would assess the non-accomplice evidence but whether a rational fact-finder could conclude that the non-accomplice evidence tends to connect the accused to the offense. *See id*. at 509.

6

Each case must be judged on its own facts, and there is no set amount of non-accomplice corroboration evidence that is required. *Malone*, 253 S.W.3d at 257. The Court of Criminal Appeals has observed that circumstances that are seemingly insignificant may constitute sufficient evidence of corroboration. *Id.* Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Id.* But the presence of a defendant at the scene of a crime, by itself, is insufficient to corroborate accomplice testimony. *Id.*

Aside from Santollo's accomplice testimony, evidence at trial included the following:

- Charleen Gonzalez testified that appellant knew how to get to the ranch. Appellant's mother, the only other member of appellant's family known to have been to the ranch before the date of the offense, testified that she did not tell Cristobal or Moises how to get to the ranch.

- Texas Ranger Brian Taylor reviewed surveillance video footage from a Houston Shell station and the McDonald's in Sealy, Texas. The surveillance video showed appellant in those locations with the other accused parties the morning of the offense.

- According to Ranger Taylor, the surveillance video showed appellant and Santollo leading Cristobal and Moises. Toll road records from that date also show Santollo's red Honda entering the toll plaza immediately before the white pickup truck.

- Police officer Brad Murray investigated the scene shortly after the crime and found hats, gloves, sweaters, a sweatshirt and a roll of duct tape. Appellant's DNA could not be excluded as a contributor to the DNA profile on a hat recovered at the crime scene nor could it be excluded as the single contributor to the DNA profile on the inside of a glove.

- Police officer Tony Fourroux viewed the placement of the surveillance cameras at the Gonzalez's ranch house and observed that two of the surveillance cameras had been moved to face another direction.

- State trooper Jesse Deleon interviewed appellant in the hospital shortly after the crime. Appellant could not recall anything about the intruders except that they spoke English. Appellant also informed Jesus Gomez Ramos that the intruders spoke in English, with no accents.

- Appellant denied interacting with his brothers on the day of the offense.

- Santollo and appellant exchanged text messages while appellant was traveling to the ranch with the Gonzalezes and just before they arrived at the ranch.

- Texas Ranger Adolphus Pressley testified that he obtained records from the toll plaza on the Westpark Toll Road and determined that a red Honda Civic automobile passed through the toll plaza without paying twice on the morning of the crime, traveling westbound both times. The white pickup truck had a single violation at the same plaza.

The non-accomplice evidence shows that appellant was with his brothers on the morning of the crime and that he went with them to Gonzalez's ranch the morning of the murder. Appellant's DNA could not be excluded from items worn by the perpetrators to conceal their identity while they moved about the ranch that morning. The evidence shows that after going to the ranch in the morning, appellant traveled a substantial distance back to his home and then traveled back to the ranch again with the Gonzalezes. Appellant did so without mentioning to the Gonzalezes that he had been to the ranch that morning and while continuing to communicate via text messages with his cousin.

The evidence showed that appellant was familiar with the location of Dr. Gonzalez's ranch and the evidence suggested that none of the other perpetrators were familiar with the area. *See Saenz v. State*, 976 S.W.2d 314, 318 (Tex. App.—Corpus Christi 1998, no pet.) (noting that the defendant was the only party present who appeared to be familiar with the neighborhood and streets). Appellant's familiarity with the ranch also suggests familiarity with the security cameras, which were disabled and displaced before the murder.

In addition to failing to mention to the Gonzalezes that he had been present at the ranch earlier the morning of the murder, appellant lied to police officers about his activity that morning. *See Padilla v. State*, 326 S.W.3d 195 (Tex. Crim. App. 2010) (noting that jury could have found defendant "less than truthful" in videotaped statement to police); *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (stating that false statements may considered as circumstantial evidence of guilt). Not only did appellant lie about his activity the morning of the murder, he made statements to investigating police officers designed to thwart or frustrate the police investigation that followed. Specifically, he reported that the attackers spoke unaccented English. *See King*, 29 S.W.3d at 565.

The non-accomplice evidence showed appellant acted with his brothers and cousin as they prepared for the crime and then he lied about those activities to police officers. After eliminating the accomplice testimony from consideration and then examining the remaining portions of the record, we conclude that the record contains ample evidence linking appellant in some way to the commission of the capital murder of Dr. Gonzalez and showing that rational jurors could conclude that this evidence sufficiently tends to connect appellant to this offense. *See Simmons v. State*, 282 S.W.3d 504, 509 (holding that there was sufficient non-accomplice evidence to allow rational jurors to find that this evidence tends to connect the appellant to the offense). Under the applicable standard of review, we conclude non-accomplice evidence tends to connect appellant with the commission of the crime for which appellant was convicted. *See id.* Accordingly, we overrule appellant's first issue.

**B. Arguments that Automatic Punishment of Life in Prison without Parole Violates Eighth Amendment of the United States Constitution and article I, section 13 of the Texas Constitution**

Under Texas's statutory capital-murder-punishment scheme, defendants convicted of capital murder who do not receive the death penalty must be sentenced to life imprisonment without the possibility of parole. *See* Tex. Penal Code Ann. § 12.31(a)(2) (West 2014). In his second and third issues, appellant asserts this statutory scheme violates the cruel-and-unusual-punishment prohibition of the Eighth Amendment to the United States Constitution as well as article I, section 13 of the Texas Constitution. More specifically, appellant argues that his mandatory life sentence is unconstitutional because the sentencing scheme provided no vehicle for the consideration of mitigating evidence. Appellant asks this court to extend the United States Supreme Court's holding in *Miller v. Alabama* to adult offenders. *See* —U.S.—, —, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012) (holding that imposing a mandatory sentence of life without the possibility of parole on individuals who commit capital murder before the age of eighteen violates the Eighth Amendment).

Appellant did not preserve error by voicing this complaint in the trial court, and appellant concedes that he did not do so. Nonetheless, appellant argues that the errors he asserts amount to fundamental error and therefore preservation of error in the trial court is not necessary.[1] Before a party may present a complaint for appellate review, generally the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1; *Karena v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that a defendant may not raise for the first time on appeal a facial challenge to the

---

[1] Appellant actually argues that these errors amount to "plain error," and he cites federal cases applying the federal plain-error rule. In Texas criminal procedure, there is no plain-error rule, so we construe appellant's argument to refer to "fundamental error," which is the term in Texas criminal procedure that corresponds to the term "plain error" in federal procedure. *See Jimenez v. State*, 32 S.W.3d 233, 238 (Tex. Crim. App. 2000); *Zill v. State*, 355 S.W.3d 778, 788 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

constitutionality of a statute); *Sloan v. State*, 418 S.W.3d 884, 891 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Wilkerson v. State*, 347 S.W.3d 720, 722–23 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). This court already has rejected a substantially similar complaint based on failure to preserve error in the trial court and held that this complaint did not constitute a complaint of fundamental error. *See Sloan*, 418 S.W.3d at 891. *See also Wilkerson*, 347 S.W.3d at 722–23 (rejecting similar pre-*Miller* complaint based on failure to preserve error in the trial court).

In *Garza v. State*, the Court of Criminal Appeals of Texas determined that a juvenile does not waive a complaint that mandatory punishment of life in prison without the possibility of parole violated the Eighth Amendment by failing to voice that complaint in the trial court. *See* —S.W.3d—,—, 2014 WL 2589770, at *3 (Tex. Crim. App. 2014). The Court of Criminal Appeals noted that Eighth Amendment issues generally are forfeited if not raised in the trial court. *See id.* at *1. But, the high court created an exception to the preservation-of-error requirement for "substantive status-based or individualized-sentencing claims under the Eighth Amendment . . . embraced by *Miller*." *See id.* at *3. Appellant does not assert a substantive status-based or individual-sentencing claim embraced by *Miller*. Rather, appellant urges this court to extend *Miller*. Accordingly, the Court of Criminal Appeals in *Garza* did not overrule or abrogate this court's binding precedent requiring that one who was an adult at the time of the offense preserve an Eighth Amendment challenge to a sentencing scheme for mandatory life imprisonment without the possibility of parole in the trial court. *See id.*; *Sloan*, 418 S.W.3d at 891.

Under this court's precedent, appellant was required to preserve error in the trial court as to the complaints raised in his second and third issues. *See Sloan*, 418

11

S.W.3d at 891; *Wilkerson,* 347 S.W.3d at 722–23.  Because he failed to do so, he is not entitled to appellate review of these complaints and we overrule them.

### III. CONCLUSION

Non-accomplice evidence tends to connect appellant with the commission of the capital murder of Dr. Gonzalez and thus the record contains sufficient evidence to satisfy the requirements of the accomplice-witness rule.  We do not address appellant's complaints under the United States Constitution and the Texas Constitution because he was required to preserve error in the trial court but failed to do so.

The judgment of the trial court is affirmed.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.

Publish — TEX. R. APP. P. 47.2(b).