**Affirmed and Opinion filed October 15, 2019.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00884-CR

_____

**NATHANIEL DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1456812**

## OPINION

Nathaniel Davis challenges the legal sufficiency of the evidence in support of his capital murder conviction and challenges the constitutionality of his mandatory life sentence. The State charged appellant by indictment with capital murder, alleging that he intentionally caused the death of the complainant while burglarizing or attempting to burglarize a habitation. In the course of committing the offense, appellant entered the apartment that he previously had shared with his ex-girlfriend. Appellant contends his ex-girlfriend did not have a greater right to

possess the apartment and thus the jury's finding that he committed burglary is not supported by legally sufficient evidence. Because we conclude otherwise and because appellant waived his constitutional challenges, we affirm.

## *Background*

Appellant and his ex-girlfriend, Ms. Daniels, began dating in 2013. They moved into an apartment in November 2014 that had been leased by Daniels' cousin, Michael Rose. Rose allowed Daniels and appellant to live together in the apartment. They did not sign a lease, but both had keys. Rose paid the rent.[1]

By mid-December, appellant told Daniels that he wanted to move out. When he did so, he left a television and some other personal items. Appellant later attempted to reconcile with Daniels, but she did not want to resume the relationship. In the meantime, Daniels had begun dating Searrier Smith.

After appellant moved out, he still had his key but never used it to reenter the apartment. Rose testified that both Daniels and appellant had permission to come and go from the apartment as they pleased.[2] Rose thought that appellant was "coming and going from the apartment as the relationship was on and off," but Daniels testified that appellant did not return to the apartment until the morning of the offense or possibility the night before.

By early February 2015, Daniels was staying with Smith at his mother's house and "[e]very now and then . . . but not every night" staying in the apartment. One night, Daniels and Smith spent the night in the apartment. Daniels testified that appellant called Daniels about 20 times that night and someone knocked on the

---

[1] Rose testified that he was staying with his aunt when the offense occurred, but his clothes were in the apartment, so he would go by every few days to get more clothes.

[2] After the offense, Rose signed a consent form for police to search the apartment. He testified that "maybe one or two things" in the apartment belonged to appellant.

2

door. She assumed it was appellant but did not open the door.

The next morning, Daniels and Smith were in bed while appellant persistently knocked on the door. He started beating on the door and yelling at Daniels to open it. Appellant called Daniels and told her he brought her breakfast and wanted to take her to work. She said she did not want any breakfast or a ride to work. The knocking stopped, so Daniels assumed appellant had left.

Appellant came back and began beating on the door again. Daniels called Rose and asked him to tell appellant "to stop knocking at the door because if something gets broken, I don't want to be responsible for it." Rose responded, "Nah, you tell him" and "If you have a problem, call the police."[3] At some point during this timeframe, appellant called Daniels and told her, "if he couldn't have [her], can't nobody have [her]." Daniels hung up on him.

Daniels and Smith were still in the apartment when they heard a loud boom—the sound of appellant breaking the window. Appellant came in through the window and ran toward Daniels. Appellant brought two butcher knives, began stabbing Daniels, and said, "Bitch, you gonna die today."

Smith came up behind appellant while he was attacking Daniels. Daniels looked at Smith, alerting appellant that Smith was there. Appellant turned around and was surprised to find a man with Daniels. Appellant stabbed Smith in his abdomen. Smith said, "Bro, you stabbed me," fell to his knees and onto his face, and never got up again.

Appellant went back to stabbing Daniels. He then dragged Smith to the window, kicked him multiple times in the face, and said, "This is my woman. She belongs to me. . . . And you over here trying to F her." Appellant turned back,

_____

[3] From Daniels' testimony, it seems that she called Rose on the morning of the offense, but Rose testified it was the night before.

3

grabbed Daniels by the head, stabbed her again, and cut around her neck. He walked back to Smith and checked Smith's pulse. Daniels then closed her eyes and pretended to be dead. Appellant walked on her from her head to her feet. He then washed his hands and checked Daniels' pulse. He said, "We can have each other now" and left. Appellant had stabbed Daniels 22 times, but she lived.

## *Discussion*

In three issues, appellant challenges his capital murder conviction. He first challenges the jury's finding that he committed murder in the course of committing or attempting to commit burglary. Second, he challenges the constitutionality of his mandatory life sentence without the possibility of parole.

### I. Evidence of Ownership Supported Burglary Finding

We first turn to appellant's legal sufficiency challenge. Appellant contends that the evidence is insufficient to support his capital murder conviction because the State did not prove that he committed murder in the course of committing or attempting to commit burglary of a habitation, which is the ground for capital murder charged by the State. Specifically, appellant contends that the State did not present legally sufficient evidence that he entered the apartment where the crime occurred without the effective consent of the owner as defined by the Penal Code because he and Daniels had equal rights of possession of the apartment.

When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for

4

that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt as long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

As correctly set forth in the charge to the jury, a person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit burglary of a habitation. Tex. Penal Code § 19.03(a)(2). A person commits burglary of a habitation if, without the effective consent of the owner, he enters a habitation with intent to commit a felony or an assault or enters a habitation and commits or attempts to commit a felony or an assault. Tex. Penal Code § 30.02(a); *see also Morgan v. State*, 501 S.W.3d 84, 90 (Tex. Crim. App. 2016). As the Court of Criminal Appeals has noted, "The Penal Code imparts a specialized and technical meaning to the word 'owner.'" *Morgan*, 501 S.W.3d at 91. An owner under the Penal Code is defined in one of three ways: a person who has (1) title to the property, (2) possession of the property, whether lawful or not, or (3) a greater right of possession to the property than the defendant. Tex. Penal Code § 1.07(a)(35)(A). "Possession" is defined as "actual care, custody, control, or management." *Id*. § 1.07(a)(39). We measure a person's status as owner at the time of the offense. *Morgan*, 501 S.W.3d at 92.

Appellant contends Daniels did not have a greater right of possession to the apartment than appellant did when he committed the offense because appellant and Daniels were guests of Rose who both had permission to use the apartment. We

5

need not decide whether the State presented legally sufficient evidence that Daniels had a greater right of possession, because at the time of the offense Daniels had possession of the house and appellant did not.

Rose testified that he allowed both appellant and Daniels to stay in his apartment and they could each come and go as they pleased. Despite this fact, appellant had moved out and taken most of his possessions over a month before the murder. He did not return to the apartment until one night in early February or the following morning while Daniels and Smith were staying there. That morning, appellant repeatedly pounded on the door and called Daniels on the phone. After she refused to let him in, he left. He then returned and forced his way in by breaking a window. He brought butcher knives with him and used them to attack Daniels and Smith.

Based on these facts, a rational jury could have concluded beyond a reasonable doubt that Daniels had actual care, custody, control, or management of the apartment while she and Smith were staying there. Accordingly, Daniels would have been in possession of the apartment at the time of the offense. As a person in possession of the apartment, Daniels would have been an owner as defined by the Penal Code. *See* Tex. Penal Code § 1.07(35)(A). Accordingly, the State presented legally sufficient evidence that Daniels was an owner of the apartment at the time of the offense. *See, e.g., Carrasco-Flores v. State*, No. 08-13-00231-CR, 2015 WL 2343587, at *8 (Tex. App.—El Paso May 14, 2015, no pet.) (mem. op., not designated for publication) (noting that when occupant of apartment was denied entry in response to his knocking, the residents inside had possession, and the defendant's remedy, if any, would be "to contact the apartment's management, contact the police, or seek a writ of re-entry from a justice court," not to forcibly enter); *Dominguez v. State*, 355 S.W.3d 918, 923 (Tex. App.—Fort Worth 2011,

6

pet. ref'd) (concluding "whether . . . the evidence showed that [the complainant] had a greater right of possession, it showed at the time of the offense she had possession of the house, lawfully or not, and [the defendant] did not").[4] We overrule appellant's first issue.

## II.    Eighth Amendment Challenges Waived

In Texas, defendants convicted of capital murder committed when they were at least 18 years of age must be sentenced to life imprisonment without the possibility of parole if they do not receive the death penalty. Tex. Penal Code § 12.31(a)(2); *Cerna v. State*, 441 S.W.3d 860, 867 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In his second and third issues, appellant contends that his mandatory life sentence without the possibility of parole constitutes cruel and unusual punishment in violation of the United States and Texas Constitutions.[5] Appellant concedes that he did not object to the imposition of his sentence or otherwise raise these issues below but contends that the mandatory imposition of his life sentence is void and thus he was not required to preserve error as to these complaints.[6]

Generally, Eighth Amendment challenges are forfeited if not raised in the trial court. *Cerna*, 441 S.W.3d at 867. The Court of Criminal Appeals has recognized an exception to this rule for a constitutional challenge to a mandatory life sentence without the possibility of parole for those younger than 18 years of age at the time of the offense. *See Garza v. State*, 435 S.W.3d 258, 262 (Tex. Crim.

---

[4] Appellant argues that the court's reasoning in *Dominguez* is "a highly dangerous point of view," but we are bound by the plain language of the statute.

[5] U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Tex. Const. art. I, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted.").

[6] Appellant does not cite any authority for this proposition, but we address it nonetheless.

App. 2014). However, the court recently refused to extend the *Garza* rule to a defendant who did not claim he was younger than 18 at the time of the offense. *Franklin v. State*, 579 S.W.3d 382, 385 (Tex. Crim. App. 2019).

The defendant's argument in *Franklin* is different from the issue raised here, but the analysis in *Franklin* is consistent with our analysis in this case. The defendant in *Franklin* contended that he was not required to show he was younger than 18 at the time of sentencing. *Id*. The Court of Criminal Appeals noted that *Garza* was decided after the Supreme Court decided in *Miller v. Alabama*, 567 U.S. 460, 465 (2012), that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Franklin*, 579 S.W.3d at 385 (quoting *Miller*, 567 U.S. at 465). In concluding that the defendant was required to preserve error as to his claim regarding who bears the burden of proof on the issue of age, the Court of Criminal appeals stated: "[I]nvoking *Miller* does not cast a magic cloak of unforfeitability over a claim. A defendant who wishes to rely on *Miller* must claim that he was under the age of 18 at the time of his offense." *Id*. Here, appellant was not younger than 18 at the time of the offense and did not invoke *Miller*, *Garza*, or any other authority in support of his argument that he was not required to preserve error on his constitutional challenges.

We have held that a person at least 18 years of age at the time of an offense must preserve error in the trial court as to a complaint that a mandatory life sentence is unconstitutional. *Cerna*, 441 S.W.3d at 867–68. We also refused to extend *Garza* to "overrule or abrogate this court's binding precedent requiring that one who was [at least 18 years of age] at the time of the offense [must] preserve" error on a constitutional challenge to a sentencing scheme for mandatory life

8

imprisonment without the possibility of parole.[7] *Id.* at 868. In accordance with binding precedent, we conclude that appellant was required to preserve error in the trial court as to his constitutional complaints. *See id*. We overrule appellant's second and third issues.

### *Conclusion*

We affirm the judgment of the trial court.


/s/    Frances Bourliot
       Justice


Panel consists of Justices Christopher, Bourliot, and Spain.

Publish — TEX. R. APP. P. 47.2(b).

---

[7] We avoid the term "adult" because Texas criminal law effectively treats persons at least 17 years of age as "adults," notwithstanding the fact that Texas civil law treats persons at least 18 years of age as "adults" (age of majority). *Compare* Tex. Penal Code § 8.07(b) *with* Tex. Civ. Prac. & Rem. Code § 129.001.