**240·15**

NO. _14-13-01118-LR_

IN THE

COURT OF APPEALS

OF TEXAS

ORIGINAL

DANIEL JACOB STINER,

(Petitioner)

VS.

THE STATE OF TEXAS,

(Respondent)

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 04 2015

Abel Acosta, Clerk

On appeal from Cause No. 14-13-01118-Cr, from the
Court of Appeals for the Fourteenth District of Texas

PETITION FOR DISCRETIONARY REVIEW

DANIEL JACOB STINER (Pro Se)

3060 FM 3514 #1902902

BEAUMONT, TEXAS, 77705

FILED IN
COURT OF CRIMINAL APPEALS

MAY 04 2015

Abel Acosta, Clerk

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................i

INDEX OF AUTHORITIES......................................ii-iii

STATEMENT REGARDING ORAL ARGUMENT...........................iv

STATEMENT OF THE CASE.......................................iv

STATEMENT OF PROCEDURAL HISTORY.............................iv

GROUNDS FOR REVIEW...........................................1

1. The evidence was insufficient as a matter of law to
   sustain the conviction for the offense of Capital
   Murder, whereas, the evidence failed to establish
   Mr. Stiner's specific intent to cause the death of
   the complainant..........................................1

2. The automatic punishment of LIFE without parole violates
   U.S. Constitution Amedment VIII, and/or Texas Constitution,
   art. I, §13, whereas, there is no vehicle for consideration
   of mitigating evidence which would justify a less severe
   sentence, either by a jury or by parole authorities......1

ARGUMENTS................................................2-15

PRAYER FOR RELIEF..........................................15

APPENDIX.................................................EX-A

# INDEX OF AUTHORITIES

**U.S. SUPREME COURT CASES:**

ATKIN V, VIRGINIA, 536 u.s. 304 (2002)........................11

EDDINGS V. OKLAHOMA, 455 u.s. 104 (1982)......................10

GRAHAM V. FLORDIA, 130 S.Ct. 2011 (2000)......................10

HARMELIN V. MICHIGAN, 501 U.S. 957 (1999)....................13

JACKSON V. VIRGINIA, 443 U.S. 307 (1979).....................4

LOCKETT V. OHIO, 438 U.S. 586 (1978).........................11

MILLER V. ALABAMA, 132 S.Ct. 2455 (2012)....................8

OREGON V. HASS, 420 U.S. 714 (1975).........................13

SOLEM V. HELM, 463 U.S. 277 (1983)..........................10

SUMNER V. SHUMAN, 483 U.S. 66 (1987)........................10

TROP V. DULLES, 356 U.S. 86 (1976)..........................11

WOODSON V. NORTH CAROLINA, 428 U.S. 280.....................10

**TEXAS STATE CASES:**

BROOKS V. STATE, 323 S.W.3d 893 (Tex.Crim.App. 2010)........4

CLEWIS V. STATE, 922 S.W.2d 126 (Tex.Crim.App. 1996)........4

FULLER V. STATE, 829 S.W.2d 191 (Tex.Crim.App. 1992)........3

HEITMAN V. STATE, 815 S.W.2d 681 (Tex.Crim.App. 1991).......13

HERNANDEZ V. STATE, 819 S.W.2d 806 (Tex.Crim.App. 1991).....3

HUGHS V. STATE, 897 S.W.2d 285 (Tex.Crim.App. 1994).........4

IBANEZ V. STATE, 749 S.W.2d 804 (Tex.Crim.App. 1986)........5

MENDEZ V. STATE, 138 S.W.3d 334 (Tex.Crim.App. 2004)........6

MILLER V. STATE, 939 S.W.2d 681 (Tex.App.-El Paso 1996).....8

ROSS V. STATE, 861 S.W.2d 870 (Tex.Crim.App. 1992)..........5

SLOAN V. STATE, 418 S.W.3d 884 (14th. Dist. 2013)...........9

SHOLARS V. STATE, 312 S.W.3d 694 (1st Dist. 2009)...........5

THREADGILL V. STATE, 146 S.W.3d 654 (Tex.Crim.App. 2004)....4

TURNER V. STATE, 805 S.W.2d 423 (Tex.Crim.App. 1991)........5

WILKERSON V. STATE, 347 S.W.3d 720 (14th Dist. 2011)........9

WRIGHT V. STATE, 28 S.W.3d 526 (Tex.Crim.App. 2000).........8

**TEXAS STATUTES:**

TEX.CONST., ART. I, §13........................................8

TEX.R.EVID., RULE 103(d)......................................8

V.A.C.C.P., ART.12.31(a)(2)..................................13

V.A.C.C.P., ART. 19.03(a)(2)..................................3

T.R.A.P., RULE 33.1...........................................6

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner, hereinafter, referred to as, Mr. "STINER," is presently incarcerated at the Mark W. Stiles Unit, in Beaumont, Texas, and is proceeding as a pro se, indigent litigator, without the assistance of counsel, etc. Mr. Stiner would request oral arguments, if in the event such is necessary to resolve a factual and/or legal matter. However, appointment of counsel would be needed for Mr. Stiner's representation.

## STATEMENT OF CASE

Mr. Stiner was charged with the felony offense of Capital Murder on March 30, 2011. (C.R. at 42). The State did not seek the death penalty. On December 4, 2013, he entered a plea of not guilty and proceeded to trial by jury. On December 6, 2013, the jury found Mr. Stiner guilty of Capital Murder as charged. (C.R. at 123). Mr. Stiner received an automatic sentence by the trial court of LIFE without parole. (C.R. at 128). Mr. Stiner filed a timely notice of appeal. (C.R. at 133).

## STATEMENT OF PROCEDURAL HISTORY

On February 5, 2015, the Court of Appeals for the Fourteenth District of Texas, AFFIRMED Mr. Stiner's conviction in Cause No. 14-13-01118-CR. See: (EXHIBIT-A).

Mr. Stiner did not request a rehearing of the Court of Appeals opinion and has now timely filed his Petition For Discretionary Review, which is due on May 8, 2015.

## GROUNDS FOR REVIEW

**ONE**: THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE CONVICTION FOR THE OFFENSE OF CAPITAL MURDER, WHEREAS, THE EVIDENCE FAILED TO ESTABLISH MR. STINER'S SPECIFIC INTENT TO CAUSE THE DEATH OF THE COMPLAINANT:

Mr. Stiner asserts review of this issue is important, whereas, not only did the Court of Appeals' decision conflict with another Court of Appeals in regards to what constitutes "INTENT," but the Court of Appeals also has decided an important question of state and federal law in such a way that it conflicts with the applicable decisions of the Court of Criminal Appeals, and/or U.S. Supreme Court;

**TWO**: THE AUTOMATIC PUNISHMENT OF LIFE WITHOUT PAROLE VIOLATES U.S. CONST. AMEND. VIII, AND/OR TEX. CONST., ART. I, §13, WHEREAS, THERE IS NO VEHICLE FOR CONSIDERATION OF MITIGATING EVIDENCE WHICH WOULD JUSTIFY A LESS SEVERE SENTENCE, EITHER BY A JURY OR PAROLE AUTHORITIES:

Mr. Stiner asserts, review of this issue is important, whereas, not only has the Court of Appeals decided an important question of state and federal law that has not been, but should be settled by the Court of Criminal Appeals, but the Court of Appeals also decided an important question of state and federal law that conflicts with U.S. Supreme Court decisions regarding Capital sentencing and/or life without the possibility of parole.

1.

## ARGUMENTS

ISSUE ONE: THE EVIDENCE IS INSUFFICIENT AS A METTER OF LAW TO SUSTAIN THE CONVICTION FOR THE OFFENSE OF CAPITAL MURDER, WHEREAS, THE EVIDENCE FAILED TO ESTABLISH MR. STINER'S SPECIFIC INTENT TO CAUSE THE DEATH OF THE COMPLAINANT:

---

The State alleged that, on December 25, 2010, Mr. Stiner entered a convenience store to rob it. He saw the clerk go through a STEEL door and he feared the clerk was going to obtain a weapon, so he fired five shots into the closed STEEL door before taking the cash register. Mr. Stiner then left the store with the cash register. Mr. Stiner did not know the complainant had been strucked by the bullets and died. (RR.7, p.203-225); (RR.7, p.16-29).

Mr. Stiner voluntarily turned himself in to police and admitted to robbing the store of its cash register, but stressed that he never intended for the complainant to be shot when he fired the rounds into the closed STEEL door and that he lacked the "conscious objective and desire" to cause the complainant's death. (RR.7, p.203-225)

The Court of Appeals for the 14th District of Texas, held, there was legally sufficient evidence from which the jury could have found every element of Capital Murder beyond a reasonable doubt, due to reason, although Mr. Stiner testified directly that he did not intend to kill the complainant, the jury was free to disbelieve that testimony and infer an opposite intent from the surrounding circumstances. See: (EXHIBIT-A).

2.

The Court of Appeals based its opinion on the following allegations:

" The record showed that appellant began firing at the complainant nearly as soon as he entered the convenience store. Appellant testified that he knew that guns were sometimes hidden in convenience stores and the jury could have inferred from that testimony that appellant fired at the complainant to neutralize a perceived threat. That inference is further supported by evidence that appellant used hollow-point bullets, which are especially deadly, and he aimed his weapon near the complainant's center of mass."

" Appellant also discharged his weapon five times, when there were less dangerous means of scaring the complainant."

The jury could have reasonably determined that appellant wanted to eliminate the complainant, not just scare him."

See: (EXHIBIT-A)

A person commits the offense of capital murder if he intentionally commits murder while in the course of committing robbery. See: §19.03(a)(2), Texas Penal Code. Capital murder requires **INTENT** to kill. **Id.**

Intent can be established through circumstantial evidence surrounding the crime. HERNANDEZ V. STATE, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991); FULLER V. STATE, 829 S.W.2d 191 (Tex.Crim.App. 1992).

3.

A person commits the offense of feloney murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. See: §19.02(a)(3), Texas Penal Code.

Sufficiency of the evidence is measured by the standard enunciated by the United States Supreme Court in **JACKSON V. VIRGINIA**, 443 U.S. 307 (1979)(Whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt). See also: **BROOKS V. STATE**, 323 S.W.3d 893 (Tex.Crim.App. 2010)(overruling **CLEWIS V. STATE**, 922 S.W.2d 126 (Tex.Crim.App. 1996)).

As previously stated, the element distinguishing capital murder from felony murder is the **INTENT** to kill. Felony murder is an unintentional murder committed in the course of committing a felony while capital murder includes an intentional murder committed in the course of a felony. **THREADGILL V. STATE**, 146 S.W.3d 654 (Tex.Crim.App. 2004).

Capital murder is a result of conduct offense because it requires that appellant have the specific **INTENT** to cause the result (death). **HUGHS V. STATE**, 897 S.W.2d 285 (Tex.Crim.App. 1994).

4.

The assaultive act which causes the death of an individual must be intentional. IBANEZ V. STATE, 749 S.W.2d 804 (Tex. Crim.App. 1986).

In the instant case, Mr. Stiner does not dispute that while in the course of attempting to rob the complainant, he possessed a gun that discharged, causing the complainant's death. Mr. Stiner, however, presented evidence that he did not intend to kill the complainant. In fact, it is undisputed that he fired his weapon at a CLOSED STEEL DOOR, not at the complainant himself, and that when he fled the convenience store, he did not know that the complainant had been shot. The state failed to provide any evidence to establish that Mr. Stiner had a conscious objective or desire to kill the complainant. It is not reasonable to infer that DEATH or serious bodily injury would result from firing a gun into a closed STEEL door. See: ROSS V. STATE, 861 S.W.2d 870, 873 (Tex.Crim.App. 1992); TURNER V. STATE, 805 S.W.2d 423, 430 (Tex.Crim.App. 1991)(The mere INTENT to pull the trigger of a firearm will not satisfy a conviction for capital murder). See also: HUGHES, supra. at 295.

Although the law presumes an intent to kill if a gun is fired at the complainant in close range and that the complainant's death resulted from that shooting, see: SHOLARS V. STATE, 312 S.W.3d 694, 703 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd), a rational trier of fact could not have made this presumption under the facts of this case. Mr. Stiner fired his weapon AT A CLOSED STEEL DOOR, not at the complainant.

5.

The State alleged that, since Mr. Stiner was an Army Reservist, he had training in firing a 9.mm handgun, using Hollow-Point bullets, whereas, all five bullet holes appeared to be aimed at "center mass" of the steel door. (RR.6, p.52); (RR.7, p.127).

Not only did the State fail to present any evidence to establish their claim that Mr. Stiner had training in using a 9.mm handgun, thus, allowing the jury to SPECULATE of such, but the record clearly reveals only ONE of the five shots fired into the closed door hit a vital organ, causing the complainant's death. (RR.7, p.21-23). The other four shots were nonfatal. Id.

In addition, there was no testimony stated by the State, or defense, that indicated:

1. Mr. Stiner knew the complainant was DIRECTLY behind the closed steel door;

2. That the shot grouping were all together at "center mass";

3. That the OFFICE was the only place for the complainant to hide;

Testimonial evidence revealed that, not only were there many other places the complainant could have hid inside the OFFICE due to the size of the Office, but Mr. Stiner did NOT know the complainant had chose to hid DIRECTLY behind the closed steel door. For that reason, the evidence is insufficient to support a finding that Mr. Stiner possessed the specific INTENT to kill the complainant. Therefore, this court should reverse the conviction and remand this case to the trial court for entry of a judgment of conviction for the lesser-included offense of felony murder and for sentencing proceedings in accordance with the reformed judgment.                    6.

ISSUE TWO: THE AUTOMATIC PUNISHMENT OF LIFE WITHOUT PAROLE VIOLATES U.S. CONST. AMEND. VIII, AND/OR TEX.CONST., ART. I, §13, WHEREAS, THERE IS NO VEHICLE FOR CONSIDERATION OF MITIGATING EVIDENCE WHICH WOULD JUSTIFY A LESS SEVERE SENTENCE, EITHER BY A JURY OR PAROLE AUTHORITIES:

On February 5, 2015, the Court of Appeals for the 14th District of Texas, issued its opinion regarding the above stated claim, holding that this claim of error, if any, had not been preserved for appellate review due to trial counsel's failure to lodge a timely and specific objection pursuant to T.R.A.P. 33.1. See: (EXHIBIT-A).

Mr. Stiner asserts that, generally, a failure to object would preclude review of a claim on direct appeal. However, exceptions to the contemporaneous objection rule include: "Systematic or Absolute requirements" which are not waived by the failure to contemporaneously object. **MENDEZ V. STATE**, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004).

Rights that are waiveable only are not waived by the failure to contemporaneously object. **MENDEZ**, supra., at 342.

Such rights include, but are not limited to, the voluntary, knowing, and intelligent waiver of constitutional rights including the right to a plea of not guilty, the right to have the State prove guilt beyond a reasonable doubt, and the right to confront and cross examine witnesses against the defendant. **Id.** at 343.

7.

In addition, TEX.R.EVID. RULE 103(d), states, "In a criminal case, nothing in these rules precludes taking notice of FUNDAMENTAL ERRORS affecting substantial rights, although they were not brought to the attention of the court."

Fundamental error in the admission or exclusion of evidence when opposing counsel has not objected or made an offer of proof is almost nonexistent in current Texas criminal jurisprudence. See: MILLER V. STATE, 939 S.W.2d 681, 688 (Tex.App.-El Paso 1996, no pet.)(application of "fundamental error" to evidentiary issues has been extraordinarily frugal).

Generally, a defendant must object even to "incurable" or "unconstitutional" trial errors to preserve review of those errors on appeal. WRIGHT V. STATE, 28 S.W.3d 526, 536 (Tex.Crim. App. 2000). However, a defendant who does not object to evidence at trial might not forfeit the appellate issue if it is based on a novel constitutional right that had not been established at the time of trial.

In the instent case, Mr. Stiner asserted on appeal for the first time that, the automatic punishment of life without parole violates U.S. Const. Amend. VIII, and/or art. I, §13, of the Texas Const., whereas, there is no vehicle for consideration of mitigating evidence which would justify a less severe sentence, or parole determination.

It is unquestionable, a fundamental error would occur by failing to acknowledge the holdings of MILLER V. ALABAMA, 132 S.Ct. 2455 (2012), which clearly hold, the 8th Amend. to

8.

the U.S. Constitution prohibits disproportionately harsh punishments, which would occur when a defendant is sentenced to life without the possibility of parole, without consideration of mitigating circumstances. For that reason, this Court should visit the question as to whether a contemporaneous objection is required for preserving such an issue in question.

If this Court holds the Court of Appeals had erred by failing to review this issue on appeal, Mr. Stiner would present to the Court the following argument in support of his claim:

Because the jury convicted Mr. Stiner of capital murder, the district court judge was required by law to assess punishment at imprisonment for LIFE without the possibility of parole. see: TEX. PENAL CODE, §12.31(a)(2). Mr. Stiner contends that this sentence violates the prohibition of cruel and unusual punishment found in the U.S. Constitution Amendment Eight, and Art.I, §13, of the Texas Constitution.

This argument has been rejected in a number of cases, such as SLOAN V. STATE, 418 S.W.3d 884, 891 (Tex.App.-Houston [14th Dist.] 2013, pet. ref'd); and WILKERSON V. STATE, 347 S.W.3d 720, 722 (Tex.App.-Houston [14th Dist.] 2011, pet. ref'd) (holding that an automatic sentence of life without parole did not violate either the U.S. or Texas Constitution).

Mr. Stiner asserts that, the holdings of SLOAN, WILKERSON, and the present case, violates the holdings set forth in U.S. Supreme Court decisions, such as, SUMNER V. SHUMAN, 483 U.S. 66 (1987); EDDINGS V. OKLAHOMA, 455 U.S. 104 (1982); LOCKETT V. OHIO, 438 U.S. 586 (1978); and WOODSON V. NORTH CAROLINA, 428 U.S. 280 (1976), whereas, in these cases, the Supreme Court has prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to DEATH.

In GRAHAM V. FLORIDA, 130 S.Ct. 2011, the Supreme Court held, "life-without-parole terms share some characteristics with death sentences that are shared by no other sentences. In other words, "imprisoning an offender until he dies alters the remainder of his life by a forfeiture that is irrevocable." See: SOLEM V. HELM, 463 U.S. 277, 300 (1983).

In addition, the U.S. Supreme Court recently asserted that it now "views life-without-parole as akin to the death penalty." See: MILLER V. ALABAMA, 132 S.Ct. 2455, 2466 (2012).

This analogy made relevant the line of 8th amendment decisions requiring individualized sentencing when the state seeks to impose its "harshest penalties." GRAHAM, 130 S.Ct. at 2467.

Although the peculiar nature of JUVENILE life-without-parole played a role in MILLER's rejection of mandatory sentencing, the Court's opinion clearly supports the notion that LWOP is highly disfavored under 8th amendment analysis.

10.

The principles articulated in MILLER logically support the conclusion that the 8th amendment requires that defendants have an opportunity to offer mitigating evidence before being sentenced to life-without-parole. The value of individualized sentencing determinations, as articulated by the Court in WOODSON V. NORTH CAROLINA, 428 U.S. 280 (1976), undermines the use of mandatory sentences of life without the possibility of parole because it is not possible to create a rule that can account for every situation in which life-without the possibility of parole is the appropriate sentence. Also, the prohibition against restricting the use of mitigation by the accused, as articulated in LOCKET V. OHIO, 438 U.S. 586 (1978), suggests that the mandatory sentence of life without parole violates the 8th amendment because it denies the accused the fundamental 8th amendment concept of according offenders "human dignity." See: TROP V. DULLES, 356 U.S. 86, 100 (1976).

In ATKINS V. VIRGINIA, 536 U.S. 304 (2002), the U.S. Supreme Court recognized the need to give greater scrutiny to the process by which states sentence offenders in capital cases. This includes a ban on the use of mandatory death sentences. Life without parole sentences and death sentences share the reality of no legitimate hope of release from confinement, no matter how rehabilitated the offender becomes, prior to death.

As the Court recognized in GRAHAM, supra.,:

"As for punishment, life without parole is the second most severe penalty permitted by law."

11.

"It is true that a death sentence is unique in its severity and irrevocability. Yet, life without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration..."

GRAHAM, 130 S.Ct. at 2027.

If a death sentence is no different than a sentence of life without parole, then the principles of individualized consideration and mitigation apply to sentences of life without parole and any limitation on an offender's ability to include evidence of why his life still has value is cruel and unusual.

As the Court in LOCKETT, supra., emphasized, the seriousness of the sentence requires providing the offender an opportunity to make his best arguments - without limitations - as to why he does not deserve to die in the custody of the State. See: 438 U.S. at 598. MILLER, supra., echoes this principle, emphasing the significance of considering "the character and record of the individual offender or the circumstances of the offense," including "the possibility of compassionate or mitigating factors." MILLER, 132 S.Ct. at 2473. See also: WOODSON, supra., 428 U.S. at 304.

As the court made clear in, MILLER, WOODSON, and LOCKETT, a State cannot impose a death sentence on an offender without a sentencing determination made by a judge or jury. The decision

12.

to give a sentence of life without parole requires the court to weigh the aggravating and mitigating circumstances of the case before it imposes a sentence of life without parole. A mandatory sentencing statute that does not allow consideration of these issues and that does not provide for an alternative sentencing option violate the 8th amendment to the U.S. Const.

For the additional following reasons, this court should hold that C.C.P. art. 12.31(a)(2), violates the Texas Constitutional counterpart of the 8th Amendment, namely TEX.CONST. Art. I, §13.

Federal constitutional law merely provides the "floor" for a defendant's rights. State law may provide greater protection. See: HEITMAN V. STATE, 815 S.W.2d 681 (Tex.Crim.App. 1991); and OREGON V. HASS, 420 U.S. 714 (1975).

A thorough discussion of the concept of independent Texas Constitutional law was presented in HEITMAN, and is incorporated herein by reference.

HEITMAN, recognized that federal constitutional case law may be persuasive as to Texas constitutional law, but not controlling. Just as Texas courts can consider HARMELIN V. MICHIGAN, 501 U.S. 957, which foreclosed a holding that mandatory life-without-parole sentences for juveniles violate the 8th amendment, but are not limited by it, in considering Texas Constitutional law, they also can consider the REASONING of GRAHAM and MILLER. In other words, nothing prohibits a Texas Court from taking the reasoning of MILLER, and other Supreme Court cases, and hold that it applies to the Texas Constitution.

13.

The text of art. I, §13, reads in relevant part:

"Excessive bail shall not be required, nor excessive fines imposed, nor CRUEL or UNUSUAL punishment inflicted."

Thus, the Texas Constitution refers to cruel OR unusual punishment, rather than cruel AND unusual punishment as used in the 8th amendment. For that reason, the Texas Constitution expends the interpretation of what constitutes punishment that "shocks the conscious" of our society.

It is unquestionable, Mr. Stiner's sentence of life without the possibility of parole, not only violates State and Federal Constitutional rights pretaining to cruel and/or unusual punishments, but it denies human dignity in its fullest capacity.

Although, Mr. Stiner was not a juvenile at the time of his offense, he was: (1) only 22 years old, (2) an Army Reservist, (3) had NO prior convictions, and (4) fully assisted police with their investigation by directing them to where he had left the cash register, money, and other items of possible evidentiary value. Mr. Stiner clearly revealed remorse for his actions, and as stated previously, he had no INTENT of killing anyone at the time he fired his firearm at the closed STEEL door. Mr. Stiner merely fired his weapon at the door to scare anyone from attacking him. (RR.7, p.62-65, 120-121, 191-196).

Regardless of whether or not Mr. Stiner was a juvenile at the time of this offense, the automatic sentence of life without parole still violates his right to be free from cruel and/or unusual punishment pursuant to the 8th amendment to the U.S. Constitution, and/or Art. I, §13, to the Texas Constitution,

14.

whereas, there is no vehicle for consideration of mitigating evidence which would justify a less severe sentence, either by a jury or by parole authorities. Therefore, Mr. Stiner prays his Petition for Discretionary Review be granted, and the appropriate relief be granted to relieve him of his illegal confinement.

## OATH

I, DANIEL JACOB STINER, do declare and certify, under the penalty of perjury pursuant to Tex.Civ.Prac.Rem. Code, §132.001 thru §132.003, that the facts stated herein my Petition For Discretionary Review are true and correct, and that a true and correct copy of said PDR was served on Respondent, by U.S. Mail, poastage prepaid, addressed to: Ms. Katherine Warren

(Asst. Dist. Attny.)

1201 Franklin St., 6th Fl.

Houston, Texas, 77002

Executed on this 30 April 2015.

and

DANIEL JACOB STINER

3060 FM. 3514 #1902902

BEAUMONT, TEXAS, 77705

State Prosecutor

P.O. Box 12405

Austin, Texas, 78711

15.

# APPENDIX

# EXHIBIT



**Affirmed and Memorandum Opinion filed February 5, 2015.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-13-01118-CR

---

### DANIEL JACOB STINER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1290078**

---

## MEMORANDUM OPINION

In this appeal from a conviction for capital murder, we consider whether the evidence is legally sufficient to support the conviction and whether an automatic sentence of life without parole is cruel or unusual in violation of the United States and Texas Constitutions. For the reasons explained below, we conclude that the evidence is sufficient and that the automatic sentence is constitutional. We therefore affirm the trial court's judgment.

## BACKGROUND

The complainant, a convenience store clerk, was gunned down at work by a masked robber. Surveillance footage showed that the complainant had attempted to run from the robber and hide behind a steel door. The robber shot five times at the door, in an area tightly clustered at chest level. The bullets were hollow points, which are designed to expand upon impact and inflict maximum damage. Each of the bullets pierced the door and struck the complainant on the other side. The robber quickly made off with the cash register, and the complainant died at the scene.

Two days after the incident, appellant turned himself in for questioning and confessed that he was the masked robber. He cooperated fully with investigators.

At trial, appellant testified that he lacked the specific intent to kill the complainant, and that the jury should finding him guilty of felony murder, but not capital murder. Appellant explained that he shot at the steel door because he believed that a gun may have been hidden in the store, and he wanted to scare or deter anyone from daring to use it.

The State countered that the killing was deliberate. It noted that appellant had military training in firearms, and that he had aimed his weapon with precision at the complainant's center of mass, where shots are often fatal. The State also noted that appellant could have easily scared the complainant in a non-deadly manner, such as by firing a single shot in the air, or by verbally threatening the complainant to stay in the back of the store, to where he had been fleeing.

The jury received instructions on both offenses, but it rejected appellant's claim of felony murder and convicted him of the greater offense of capital murder. Because the State did not seek the death penalty, the sentence was automatic.

2

Appellant received no opportunity to put on any evidence of mitigating circumstances.

## SUFFICIENCY OF THE EVIDENCE

To obtain a conviction for capital murder, the State was required to prove that appellant murdered the complainant and that the murder was intentionally committed during the course of a robbery. *See* Tex. Penal Code § 19.03(a)(2). Appellant does not dispute that he killed the complainant, or that the killing happened during the course of a robbery. He argues only that there is legally insufficient evidence that he had the specific intent to kill.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as

3

probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *See* Tex. Penal Code § 6.03(a). Intent may be inferred from circumstantial evidence, such as acts, words, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). If a person uses a deadly weapon in a deadly manner, the inference is almost conclusive that the person intended to kill. *See Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993).

Appellant testified directly that he did not intend to kill the complainant, but the jury was free to disbelieve that testimony and infer an opposite intent from the surrounding circumstances. The record showed that appellant began firing at the complainant nearly as soon as he entered the convenience store. Appellant testified that he knew that guns were sometimes hidden in convenience stores, and the jury could have inferred from that testimony that appellant fired at the complainant to neutralize a perceived threat. That inference is further supported by evidence that appellant used hollow-point bullets, which are especially deadly, and he aimed his weapon near the complainant's center of mass. *See Evans v. State*, 440 S.W.3d 107, 113 (Tex. App.—Waco 2013, pet. ref'd) (holding that the jury could have inferred an intent to kill from evidence that the defendant shot a convenience store clerk in the chest using a gun loaded with hollow-point bullets). Appellant also discharged his weapon five times, when there were less dangerous means of scaring the complainant. *See Vuong v. State*, 830 S.W.2d 929, 934 (Tex. Crim. App. 1992) (holding that the jury could have inferred an intent to kill from

4

evidence that the defendant fired multiple shots, and most of them struck human targets). The jury could have reasonably determined that appellant wanted to eliminate the complainant, not just scare him. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) ("The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon."); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982) (op. on reh'g) (holding that there was legally sufficient evidence of an intent to kill, even though the defendant fired his weapon through a door).

We conclude that there is legally sufficient evidence from which the jury could have found every element of capital murder beyond a reasonable doubt.

## CRUEL AND UNUSUAL PUNISHMENT

Appellant argues next that an automatic sentence of life without parole amounts to cruel and unusual punishment in violation of both the United States and Texas Constitutions. Appellant relies on *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that juvenile offenders could not be sentenced to a mandatory term of life without parole. Even though appellant was an adult at the time of his offense, he believes that the spirit of *Miller* applies, and that he should have been allowed to present evidence of mitigating circumstances.

The State responds that error, if any, has not been preserved, and we agree. Before a party may present a complaint for appellate review, the record must normally show that the complaint was made to the trial court by a timely request, objection, or motion. *See* Tex. R. App. P. 33.1. Appellant never objected at trial that the sentencing statute violated either the United States or Texas Constitutions. Because no specific and timely objection was made, appellant has preserved nothing for appellate review. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.

5

Crim. App. 1996); *Cerna v. State*, 441 S.W.3d 860, 867–68 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Even if error had been preserved, this court has routinely held that an automatic sentence of life without parole is not unconstitutional when assessed against an adult offender convicted of capital murder. *See Sloan v. State*, 418 S.W.3d 884, 891–92 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (refusing to extend *Miller* to the adult-offender context); *Wilkerson v. State*, 347 S.W.3d 720, 722–23 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding that an automatic sentence of life without parole did not violate either the United States Constitution or the Texas Constitution). Appellant's constitutional challenges are therefore without merit.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).

6