**Affirmed and Opinion filed March 24, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00769-CR

### SHAWN MAYREIS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1340556**

# O P I N I O N

This is an appeal from a conviction for capital murder of a child under the age of ten. Appellant challenges the sufficiency of the evidence supporting the conviction, the trial court's denial of appellant's motion for mistrial, and the trial court's evidentiary rulings on autopsy photographs. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The complainant A.M., born in January 2012, was the infant daughter of appellant Shawn Mayreis. After her birth, A.M. left the hospital healthy, without

any abnormal medical problems. A.M. remained healthy and developed normally. A.M.'s mother returned to work near the end of February 2012; appellant cared for A.M. during the day. On March 8, at around 4:00 p.m., A.M.'s mother received a phone call from appellant, who reported that A.M. was not breathing. The mother instructed appellant to call 911. When the mother arrived home, appellant was on the phone with the 911 operator and performing adult cardiopulmonary resuscitation (CPR) on the child,[1] who, according to the mother, looked blue. The paramedics arrived around 4:50 p.m. and were able to achieve a pulse, although A.M. was initially unresponsive.

Medical personnel transported A.M. to Texas Children's Hospital in the Medical Center where she presented with small bruises on her face, abdomen, legs, and the middle of her back. In addition, the child had several large skull fractures, multiple fractures to her anterior and posterior ribs, and retinal hemorrhaging. A.M. was unable to breathe without medical support and was unresponsive to her physical exam. Her brain was dying and swollen. Three days later she was pronounced dead.

Appellant informed emergency responders and medical personnel that A.M. was fine in the morning, but began having difficulty breathing in the early afternoon. Medical personnel found appellant's explanation of A.M.'s injuries impossible and one of A.M.'s treating physicians found evidence that A.M. had been in dire need of medical treatment for hours before appellant called emergency services.

Police arrested appellant and a grand jury indicted him for intentionally or knowingly causing death to a child under ten years of age. Appellant pleaded "not

---

[1] Appellant was performing full-chest compressions on A.M. instead of performing the compressions with two fingers.

guilty." At trial by jury, the child's mother testified along with several medical experts. The medical experts all testified that the extent and severity of A.M.'s injuries showed that they were intentionally inflicted. The jury found appellant guilty as charged and he was automatically sentenced to life in prison without the possibility of parole.

## II. ISSUES AND ANALYSIS

### A. Sufficiency of the Evidence

In his first and second issues, appellant challenges the legal sufficiency of the evidence to support his conviction. Specifically, he challenges the sufficiency of the evidence that he caused A.M.'s death as well as the sufficiency of the evidence that he did so intentionally and knowingly.

In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of

3

the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits capital murder if the person intentionally or knowingly causes the death of an individual under ten years of age. Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(8) (West, Westlaw through 2013 3d C.S.); *Martin v. State*, 246 S.W.3d 246, 261 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007); *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Hooper*, 214 S.W.3d at 14–15.

Viewed in the light most favorable to the verdict, the evidence at trial showed:

- A.M. had no abnormal medical problems prior to March 8.
- A.M.'s mother bathed A.M. in the evening on March 7 and did not notice any unusual bruises.
- A.M. was healthy when her mother left for work on the morning of March 8.
- A.M. was in the sole care of appellant on March 8 from the time the child's mother left for work until emergency responders were called to the scene. Although appellant left the apartment for a short time in the morning, appellant was the only person taking care of A.M. that day.
- Around 4:00 p.m. appellant called the child's mother and informed her A.M. was not breathing. At the mother's direction, appellant called 911.
- The paramedics and emergency responders who answered appellant's 911 call noticed a striking difference between the mother's response to A.M.'s condition and appellant's response. While the mother was hysterical, appellant appeared calm and unemotional.

4

- The paramedics noticed bruising around A.M.'s diaper line, above one eye, and on her stomach while they were transporting the infant to the hospital.

- A.M.'s autopsy revealed bruises, rib fractures, skull fractures, and extensive hemorrhaging. A.M. had bruises on her face, above her eyebrows, on her abdomen, on her legs, and in the middle of her back.

- A.M. had several large skull fractures, including a crack that went all the way across her skull. These injuries created hemorrhaging that caused A.M.'s brain to swell. The swelling caused A.M. to lose oxygen and blood to the brain, resulting in irreversible brain damage and death.

- A.M.'s injuries were caused by significant blunt force trauma. A.M. suffered at least two violent blows, one above her right eye and one behind her right ear. A.M.'s parietal bone bent to accommodate the blows until it broke. Her parietal bone failed in multiple directions.

- A.M.'s head injuries were the result of significant force. The amount of force necessary to cause A.M.'s injuries is consistent with dropping a baby down a flight of stairs or from a greater height than the average height of a human being. None of A.M.'s head injuries could have been caused by trying to get her to wake up or respond.

- A.M. suffered extensive retinal hemorrhaging. Her retinas had detached to the back of her left eye in three areas and there were multiple hemorrhages in her right retina.

- The bridge under A.M.'s tongue was torn off. A treating physician testified that the tear likely resulted from the forceful introduction of an object, such as a bottle, into A.M.'s mouth.

- A.M. had twenty-two rib fractures, including fractures to her anterior and posterior ribs. The injuries to A.M.'s anterior ribs could have been caused by improper CPR, but the injuries to her posterior ribs were not typical of improper CPR. A.M.'s posterior rib fractures were consistent with holding an infant forcefully around the ribs and shaking her or hitting her head against something.

- A.M. suffered shearing injuries, which were consistent with suffering a violent trauma that caused her arms to flail.

- The forensic anthropologist testified that, by virtue of the number of injuries, it was unlikely A.M.'s injuries were caused by accidental trauma.

5

- A treating physician opined that A.M.'s injuries occurred at least an hour before medical treatment was sought. A.M. was pulseless and blue when paramedics arrived. It would have taken hours for A.M. to "decompensate" to that state. Also, A.M.'s blood-coagulation status suggested her injuries occurred hours earlier.

- The treating physician testified that A.M.'s condition was "unmistakably due to trauma." According to the physician, "the child's body has been battered and broken, but no history of trauma of any sort [was] provided." The physician testified that extreme violence was necessary to cause A.M.'s injuries and they were not all caused by one event. According to the physician, a person of reasonable intelligence familiar with children would know he was causing serious injuries to the baby that would cause the baby's death. The physician testified that the injuries were intentional.

## 1. Evidence Appellant Caused A.M.'s Death

Appellant argues that there is no evidence that he caused A.M.'s death. He points to evidence that he was away from the apartment briefly in the morning and argues that someone could have entered the apartment and harmed A.M. in his absence. He also argues that the evidence is insufficient to show that he caused A.M.'s death because nothing in his history, relationship with A.M., or response to her death suggested he caused her death.

While the evidence showed that appellant left the apartment for approximately six minutes on the day of A.M.'s death, in the version of events he told emergency responders, medical personnel, and his wife, A.M. was healthy until much later into the day. All of the medical experts testified that A.M.'s injuries were serious and would have been immediately apparent. Based on this evidence, a reasonable jury could have concluded that if an individual had entered the apartment during the short time appellant left A.M. alone and caused these injuries to A.M., appellant would have noticed A.M.'s injuries and would not have told his wife, emergency responders, and medical personnel that A.M. was fine

6

until the afternoon. Furthermore, police responders searched the apartment and did not see any evidence of a break-in. Viewed in the light most favorable to the verdict, the evidence showed that an individual inflicted A.M.'s injuries while A.M. was in appellant's care. The child's mother testified that appellant stated he was the only one who cared for A.M. the day of the injuries. The evidence is sufficient to prove that appellant injured A.M. and that those injuries caused her death. *See Herrera v. State*, 367 S.W.3d 762, 770 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Bearnth v. State*, 361 S.W.3d 135, 140 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (holding that evidence was sufficient to support conviction when adult had sole access to a child at the time the child's injuries were sustained).

### 2. Evidence Appellant Acted Intentionally or Knowingly

Appellant argues that even if he caused the injuries that killed A.M., the evidence is insufficient for a rational jury to have concluded he did so intentionally or knowingly. A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code Ann. § 6.03(a) (West, Westlaw through 2013 3d C.S.); *Herrera*, 367 S.W.3d at 771. A person acts knowingly with respect to a result of his conduct when he is aware his conduct is reasonably likely to cause the result. Tex. Penal Code Ann. § 6.03(b) (West, Westlaw through 2013 3d C.S.); *Herrera*, 367 S.W.3d at 770. Proof of a culpable mental state may be inferred from any facts tending to prove its existence, including the acts, words, and conduct of the accused. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

The testifying medical experts all concluded that A.M.'s injuries were intentionally inflicted. Appellant told emergency responders and medical personnel that A.M. had trouble breathing, he attempted to get her to respond by hitting her

7

head, and then performed CPR. But, A.M.'s severe injuries required more force than appellant's explanation allowed and many of her injuries were in locations that were not explained by the history appellant provided. The medical examiner, forensic anthropologist, and treating physician all found appellant's explanation of A.M.'s injuries impossible and testified that the injuries did not result from accidently administering improper CPR or attempting to get A.M. to respond. *See Williams v. State*, 294 S.W.3d 674, 683 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding jury could infer intent from medical testimony that child's injuries were extensive, did not match appellant's explanation, and must have been sustained during an episode of abuse).

The medical examiner testified that an accident was unlikely because of the amount of force necessary to cause A.M.'s injuries. *See Herrera*, 367 S.W.3d at 770 (holding the severity of the injuries sustained by the infant constituted evidence of the appellant's intent). According to the medical examiner, the way A.M.'s skull fractured in multiple directions showed the fractures resulted from at least two blunt-trauma impacts from a significant force. The medical examiner testified that the amount of force necessary to cause A.M.'s skull fractures was inconsistent with the amount of force one would apply administering improper CPR or attempting to get a baby to respond. The amount of force necessary to cause A.M.'s skull fractures was more consistent with the impact of hitting a baby violently or dropping a baby down a flight of stairs. The forensic anthropologist testified that the sheer number of injuries A.M. sustained suggested the injuries were intentionally inflicted. In addition to bruising, shearing injuries, and a torn tongue, A.M. had twenty-two broken ribs. The medical experts testified that some of A.M.'s anterior ribs may have broken during improperly-administered CPR, but her posterior ribs would not have broken that way.

The medical examiner testified that after the injuries occurred it would have been immediately apparent that A.M. needed medical care. Yet, according to a treating physician, A.M. was injured for hours before appellant sought help. Based on this testimony, the jury could have concluded that appellant's delay in seeking medical care constituted evidence that he knowingly or intentionally caused A.M.'s death. A rational jury could have concluded from the number and nature of the injuries A.M. suffered that the child's injuries were not the result of an accident and appellant's implausible explanation for the injuries is circumstantial evidence that he inflicted the injuries with the intent or knowledge that they would cause A.M.'s death. *See Bearnth*, 361 S.W.3d at 140 (holding that appellant's inaccurate explanation of injuries was circumstantial evidence of guilt). Based on testimony from the medical examiner, anthropologist, and treating physician that A.M.'s injuries resulted from violent and intentional action, the jury could have concluded that A.M. could not have suffered those injuries unless appellant inflicted them knowingly or intentionally.

The evidence is sufficient for the jury to have come to the rational conclusion that appellant intentionally or knowingly caused A.M.'s death. *See Herrera*, 367 S.W.3d at 770. Appellant's first and second issues are overruled. *See id.*

**B. Testimony Regarding Appellant's Post-Arrest Silence**

In appellant's third issue, he asserts that the trial court abused its discretion in overruling his motion for mistrial after the State elicited a comment about appellant's post-arrest silence.

We review a trial court's denial of a motion for mistrial under the abuse-of-discretion standard. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Under this standard, we view the evidence in the light most favorable to the

trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id*. A mistrial is a remedy intended for extreme circumstances, when prejudice is incurable and less drastic alternatives have been explored. *See id*. In determining whether a prejudicial event was so harmful as to warrant a mistrial, we consider the prejudicial effect, any curative measures taken, and the certainty of conviction absent the prejudicial event. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Generally, a prompt instruction to disregard by the trial court will cure the error associated with improper and prejudicial evidence, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such a damning character as to suggest it would be impossible to remove the harmful impression from the jurors's minds. *See Logan v. State*, 698 S.W.2d 680, 683–84 (Tex. Crim. App. 1985).

The prosecutor asked an investigator if appellant made a statement after he was arrested and the officer testified that appellant did not. The question and answer were brief and the trial was immediately halted after the question was answered. *See Ludwig v. State*, 428 S.W.3d 344, 350–51 (Tex. App.—Amarillo 2014, no pet.) (holding that instruction to disregard cured prejudice when trial court immediately halted trial and issued thorough instruction to disregard). There was no other mention by the State or any of the State's witnesses of appellant's post-arrest silence. Moreover, the evidence showed that appellant did give statements to the police, emergency responders, and medical personnel at multiple times throughout their response and investigation. The trial court adopted a curative measure and instructed the jury to disregard the testimony. Finally, the investigator's answer likely had little, if any, effect on the jury given the weight of the evidence of appellant's guilt. Appellant made several statements indicating that A.M. was in his sole care when her injuries occurred. Evidence of the nature

10

and severity of A.M.'s injuries showed that the injuries were intentionally inflicted. The sole remark on appellant's silence was not so severe as to render the timely curative instruction ineffective. *See Archie*, 221 S.W.3d at 700. We conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See id*. Appellant's third issue is overruled.

### C. Autopsy Photographs

In his fourth issue, appellant argues that the trial court abused its discretion in admitting, over appellant's objection, approximately twenty photographs from the autopsy on A.M.'s body. Appellant argues that the probative value of these photographs was substantially outweighed by the danger of unfair prejudice. In particular, appellant argues that because drawings and figures from the autopsy report had been admitted into evidence, the photographs were unnecessary to display A.M.'s injuries.

We review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Texas Rule of Evidence 403, entitled "Exclusion of Relevant Evidence on Special Grounds," states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). A proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the

11

time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). In the context of the admission of photographs, we also consider the number of photographs, their size, whether they are in color or are black and white, whether they are gruesome, whether any bodies are clothed or naked, and, when applicable, whether the body has been altered by autopsy. *Id.*

During the medical examiner's testimony, the State introduced Exhibits 21 through 31 and 33 through 39. These exhibits are color photos from the autopsy depicting A.M.'s body as it appeared before the autopsy was conducted, the bruises, including several photographs of the bruises on the scalp, and photographs of several angles of the fractured skull. The medical examiner used these photographs to show the jury the extent and severity of A.M.'s injuries. *Harris v. State*, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983) (holding autopsy photographs were admissible where pictorial evidence helped jury understand verbal testimony).

The medical examiner explained that a significant amount of force was necessary to cause the skull fractures. She testified that the force was greater than would be associated with the explanation appellant provided. Particularly in light of appellant's arguments that A.M.'s injuries occurred as a result of his utilization of improper CPR technique, the photographs had significant probative value to prove to the jury that A.M.'s injuries did not result from improper CPR or attempting to get A.M. to respond. The images depicting the photographs of the dead infant's body are gruesome, and the medical examiner used the images throughout her lengthy testimony. These facts weigh against admitting the photographs, but the trial court does not abuse its discretion by admitting photographs of the victim into evidence merely because they are gruesome.

*Sonnier v. State*, 913 S.W.2d 511, 518–19 (Tex. Crim. App. 1995). Appellant argued that he accidentally injured A.M. by improperly administering CPR, and the State was required to prove, beyond a reasonable doubt, that A.M.'s injuries were caused intentionally or knowingly. *See Richards v. State*, 54 S.W.3d 348, 350 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). The State's evidence that the injuries were not caused by improper CPR or attempting to get A.M. to respond was that A.M.'s injuries were inconsistent with these proffered explanations. The State had to provide the jury with evidence of the injuries A.M.'s suffered. *See Gallo v. State*, 239 S.W.3d 757, 763 (Tex. Crim. App. 2007) (holding that gruesome photographs were probative to show the full extent of the injuries appellant inflicted on the victim). The autopsy photographs were probative evidence of A.M.'s injuries. Appellant argues that the State could have presented sketches of A.M.'s injuries to make these points to the jury.

The trial court did not abuse its discretion in allowing the State to show the specifics of the injuries to the jury to prove that A.M.'s injuries did not result from improper CPR. While drawings could show the places of injuries, they could not show the jury the severity of the injuries or the extent of the injuries. *See Herrera*, 367 S.W.3d at 777 (holding that probative value of gruesome autopsy photographs was not substantially outweighed by prejudice where photos showed baby likely did not die from shaking). Having examined each contested photograph in the context of the entire record and the applicable standard of review, we hold that the trial court did not abuse its discretion by concluding that the probative value of the photographs was not substantially outweighed by the potential for unfair prejudice and admitting them into evidence. *See id.* We overrule appellant's fourth issue.

13

### III. CONCLUSION

The evidence is sufficient to support appellant's conviction for capital murder of a child under the age of ten. The trial court did not abuse its discretion in denying appellant's motion for mistrial after the State elicited improper testimony relating to appellant's post-arrest silence, nor did the trial court abuse its discretion in admitting autopsy photographs into evidence.

The judgment of the trial court is affirmed.


/s/     Kem Thompson Frost
             Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.
Publish — TEX. R. APP. P. 47.2(b).