**Affirmed and Memorandum Opinion filed May 30, 2019.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00904-CR

_____

## ADRIAN RASHUN GASTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1524489**

## M E M O R A N D U M   O P I N I O N

Appellant Adrian Rashun Gaston asserts that the evidence is legally insufficient to support his conviction for capital murder either as a principal or as a party. Appellant also asserts that under the accomplice-witness rule, there is insufficient corroborating evidence tending to connect appellant with the capital murder. Lastly, appellant asserts that the trial court erred in including in the jury charge, over his timely objection, a paragraph authorizing his conviction as a co-conspirator. We affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant, Cameron Wilson, was shot and killed in his apartment on December 18, 2014. Lisa Mendoza testified that on this evening, she drove her boyfriend, Akmal "Chino" Abdullaev, and his friend, appellant, to the Hollister Apartments where they were going to "hit a lick." Mendoza testified that the two men entered the apartment and returned approximately 15 minutes later with "money, some drugs, and a watch." The men returned "running back" and looking "sweaty and like their adrenaline was rushing." In the car ride after the incident, the men admitted to Mendoza that "they beat up somebody pretty badly." She testified "Chino told me that he shot somebody."

The appellant could not be excluded as a source of DNA found in the fingernail scrapings of the complainant during the autopsy. The appellant was arrested and charged by indictment with capital murder. Appellant pleaded "not guilty." A jury found the appellant guilty as charged, and the trial court sentenced appellant to confinement for life, without the possibility of parole.

# II. ISSUES AND ANALYSIS

## A. Does sufficient evidence support the conviction?

When evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact stands as

the only judge of the witnesses' credibility and the strength of the evidence. *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

The indictment alleged that appellant, while in the course of committing and attempting to commit the robbery of the complainant, intentionally caused the complainant's death by shooting him with a deadly weapon, namely a firearm. A person commits capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit robbery. *See* Tex. Penal Code §§ 19.02(b), 19.03(a) (West 2016); *Owolabi v. State*, 448 S.W.3d 148, 150 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Direct evidence of the elements of the offense, including the identity of the perpetrator and culpable mental state, is not required. *Mayreis v. State*, 462 S.W.3d 569, 573 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The jury is permitted to make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." Tex. Penal Code § 7.01(a) (West 2016); *Cerna v. State*, 441 S.W.3d 860, 864 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

The trial court instructed the jury on the law of parties under Penal Code section 7.02(a)(2) and the law of conspiracy under Penal Code section 7.02(b). *See*

Tex. Penal Code § 7.02 (West 2016). Under section 7.02, "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2); *Cerna*, 441 S.W.3d at 864. If, in the attempt to carry out a conspiracy to commit burglary or robbery, capital murder is committed by one of the conspirators, all conspirators are guilty of the capital murder actually committed, though having no intent to commit it, if the capital murder was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *See* Tex. Penal Code § 7.02(b); *Cerna*, 441 S.W.3d at 864. When, as in this case, a jury returns a general verdict and the evidence is sufficient to support a "guilty" finding under any of the alternative allegations submitted, the reviewing court will uphold the verdict. *Rabbani v. State,* 847 S.W.2d 555, 558 (Tex. Crim. App. 1992); *Hernandez v. State*, 171 S.W.3d 347, 353 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

### *The Evidence*

At trial, the State presented Lisa Mendoza, an accomplice witness, who testified that she knew appellant through her ex-boyfriend, Chino, and that she saw the two men together on various occasions. She testified that on December 18, 2014, she finished work around 5:00 p.m. or 6:00 pm, drove Chino to pick up appellant, and then got lost driving as appellant and Chino directed her to take them to an apartment. Mendoza testified that she was intoxicated on Xanax, and was drowsy and sleepy.

According to Mendoza, the men "started talking about getting something from somebody at some apartment complex." Mendoza stated that the men "were talking about robbing somebody" during this drive, and that she assumed they

4

would be robbing them of "drugs and money." On cross-examination, Mendoza testified that the men did not explicitly state that they were going to commit a robbery; rather, they stated that they were going to "hit a lick." "Hit[ting] a lick," she agreed, can mean "a variety of things," such as purchasing drugs, burglarizing an apartment, or even bargaining at a store.[1] But Mendoza maintained she believed the men were talking about a robbery. Mendoza also testified that both men had guns in the vehicle.

Mendoza stated that after she dropped the men off, she waited "about 15 minutes or so" and then they both came running back. Chino's shirt was off, his hands were full of blood, and he was holding money, drugs, and a watch. Mendoza first testified that she could not see any marks, scrapes, bruises, blood, drugs, money, a watch, or a torn shirt on appellant because it was dark. But, later Mendoza clarified that she heard shuffling in appellant's hands so she assumed he also had something in his hands. According to Mendoza, on the ride back to Chino's house, Chino told her that he had shot somebody. Mendoza testified that she was not aware that anybody was killed until an investigator later informed her.

The State also presented Phillip McGill, a close friend of the complainant who regularly spent time around the complainant. According to McGill, he had spoken to the complainant around 3:00 p.m. on the night in question and believed that he found him dead in the complainant's apartment around 5:45 p.m. McGill testified that he had planned to hang out with the complainant, and that when he drove to the complainant's apartment to pick him up and called him to come out, he could not get a hold of the complainant. McGill testified that he noticed an air mattress pushed up against blinds of the balcony window, and that this placement seemed unusual. He knocked on the door. Finding the door closed but unlocked,

---

[1] *See also Lewis v. State*, 448 S.W.3d 138, 145–46 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (discussing meaning of the phrase "hit a lick").

McGill opened the door and saw the complainant "laying facedown." McGill testified "I could — I could tell he was shot. I seen the — the blood from the bullet wound on the back of his shirt to see that he got shot in the back." McGill testified that he closed the door and left to go to Ronald Willis's place, a friend who lived in the area. Later, Rodrick Moore, Willis's roommate, (and also a friend of McGill) called the police and the three men returned to the scene. Police investigators questioned them.

McGill testified that the complainant sold drugs out of the complainant's apartment, and that the complainant was fairly open about this fact. McGill testified that the complainant had a security system live feed camera, and he explained the complainant would not answer the door unless he recognized the person. He also testified that the complainant generally kept his house clean and that he had some nice things.

Several police officers gave accounts of the details from their investigation. Officer Hoang Tran with the Houston Police Department ("HPD"), testified that around 8:00 p.m. on the night in question, he received a dead-on-arrival call. He met Houston Fire Department officers already on the scene. Tran testified that when he entered the apartment, the body appeared to have been turned over. Tran secured the scene and called for additional units.

Detective Chad Hogue, who worked as an officer with the HPD homicide division, testified that he and his partner, Mike Arrington, were notified and left for the scene around 8:36 p.m. According to Detective Hogue, he interviewed and tested Willis, Moore, and McGill for gunshot residue. Willis had gunshot residue on his hands. During questioning, Willis admitted that he was "so high [on marijuana] that day he didn't know if he had fired a gun or not." Buccal swabs were taken for Chino, Willis, McGill, and appellant. Detective Hogue stated that police recovered a .40 caliber semiautomatic weapon from Moore.

6

Detective Arrington testified that around 8:45 p.m., he arrived at the scene and thought it looked "either like a stash house or somebody that was dealing narcotics." According to Detective Arrington, police found no evidence of forced entry. Most of the blood on the scene was by the doorway. Police found drug paraphernalia and different types of ammunition inside the home.

Detective Arrington testified to his theory of what occurred. He believed that the complainant was trying to get out of the front door in an attempt to escape or simply close the door when he was shot in the back and "the bullet went through him, ricocheted off the door and back into the apartment." According to Detective Arrington, they found two photos placed face-down in the bathroom, one drop of blood found above the bathtub, and a frothy substance in the toilet that might indicate someone got sick. Detective Arrington explained that these items together might indicate that the suspect knew the complainant. Detective Arrington testified that "it appeared through our investigation that there wasn't a whole lot of stuff there, so it was kind of hard to tell if it really was shuffled through. But some of the drawers, the content on the bathroom's sink appeared to have been, like, rifled through or kind of quickly gone through. But due to the fact that, you know, there's no drawers that were tossed or turned, we couldn't really verify one way or the other if someone had stolen anything or took anything from the apartment." Detective Arrington testified that he discovered an empty watch box in the complainant's bathroom. He explained that, consistent with his theory that there was a robbery, the actual watch was not found in the complainant's apartment or on the complainant's body.

The State also presented forensic witnesses. Alex John, an assistant medical examiner and forensic pathologist who worked at the Harris County Institute of Forensic Sciences, testified that he conducted an autopsy of the complainant's body and gave an account of his findings. The body showed blunt force trauma on

the left side of the face, gunshot wounds, an abrasion on the upper left chest, a red abrasion, and a purple contusion — injuries that could be related to the complainant having been punched or kicked. The complainant most likely was shot from a distance of six inches or less, "from the back to the front and from the right to the left and slightly downwards." In John's opinion, the cause of the complainant's death was a gunshot wound to the torso and left hand.

Diana Donley, the criminalist who worked the case in the DNA section of the Houston Forensic Science Center, provided testimony about the buccal swabs and the complainant's fingernail scrapings. Donley testified that for the blood swab from the bathroom door, Wilson could not be excluded as a possible contributor, but McGill, Willis, Moore, Chino, and appellant could be excluded. For the swab from the blood on the bathtub, Chino could not be excluded as a possible contributor, but Wilson, McGill, Willis, Moore, and appellant could be excluded. The fingernail scraping and clippings from Wilson's left hand revealed a mixture of DNA from at least two individuals. Neither Wilson nor appellant could be excluded as a possible contributor to the DNA mixture, but McGill, Willis, Moore, and Chino could be excluded as possible contributors to the DNA mixture. In cross-examination, Donley stated that it was not possible for her to determine how long the DNA was under Wilson's fingernails, whether this DNA was from blood or skin cells, how the DNA got there, or even whether the DNA was transferred by somebody else.

Melinda Marshall, the mother of the complainant, Wilson, testified that the images presented to the court were photos of her son.

### Whether these facts support the conviction under the co-conspirator theory

The evidence suffices to support appellant's conviction if, under the applicable standard of review, a rational trier of fact could have found beyond a

reasonable doubt that, in an attempt to carry out a conspiracy to commit robbery, capital murder was committed by one of appellant's fellow conspirators in furtherance of the unlawful purpose, and appellant should have anticipated the capital murder as a result of the carrying out of the conspiracy. *See* Tex. Penal Code § 7.02(b). We first consider appellant's sufficiency challenge under this theory.

### *Complainant-killed-by-a-conspirator theory*

Appellant contends that the evidence is insufficient to show that either appellant or Chino caused the complainant's death. He contends Mendoza's timeline of events made "it impossible that [the complainant] could have been killed by [appellant and Chino] in light of the time of the body was discovered." He suggests that Mendoza's testimony — that she got off work between 5:00 p.m. and 6:00 p.m. and drove home before driving Chino to pick up appellant and then to the complainant's apartment — goes against McGill's testimony that he found the body around 5:45p.m., such that the State's evidence is insufficient to support the conviction. Even if we presume the testimony creates a conflict, we must defer to the jury and presume, when faced with conflicting evidence about the timing of the occurrence, the jury resolved conflicts in favor of the prevailing party. *See Carr v. State*, 477 S.W.3d 335, 339 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The jury was free to discredit either Mendoza's or McGill's testimony about the timing of their presence at the scene without discrediting other testimony from these witnesses. *See id*.

With respect to proof of appellant as the shooter, he asserts that there is "not even a scintilla of evidence that the appellant caused [the] complainant's death." For purposes of our analysis, we shall presume for the sake of argument that the evidence is insufficient to show that appellant directly caused the complainant's

death and consider whether the evidence is sufficient to establish beyond a reasonable doubt that Chino, appellant's alleged co-conspirator, murdered the complainant. We conclude the evidence suffices to support such a finding, particularly considering the combined evidence from Mendoza's testimony (that she drove Chino to the complainant's apartment, that he left her vehicle towards the complainant's apartment with a loaded nine-millimeter gun, that he returned to Mendoza's vehicle with blood on his shirt, and that Chino admitted "that he shot somebody") and forensic evidence (showing that the complainant suffered a close-range gunshot wound, and a nine-millimeter bullet and nine-millimeter casing were found in the apartment, and that Chino's DNA was found in the complainant's apartment). *See Lewis v. State*, 448 S.W.3d 138, 145–46 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (finding sufficient evidence of murder–with-intent-to-rob-complainant elements where there was proof of defendant's plan to "hit a lick," that he had driver take him to corner of complainant's house and wait around the corner, and that jewelry was stolen from her home).

### *Conspiracy to commit robbery*

Appellant argues that there is no evidence appellant entered into an agreement to commit robbery. Mendoza testified that both appellant and Chino were directing her where to drive, that both were armed, and both were talking about robbing someone. Although Mendoza testified that that she overheard appellant and Chino "talking about robbing somebody" as she drove them to the complainant's house, appellant contends that Mendoza's testimony was based on her own interpretation about appellant and Chino's use of the phrase "hit a lick," which Mendoza conceded has meanings other than robbery. Appellant states that the evidence equally could show their intention to purchase drugs from a known dealer at a low price, or even to commit a burglary.

10

We presume the jury, when faced with conflicting evidence, resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d at 47. Thus, even presuming the "hit a lick" phrase has multiple meanings, the jury was free to interpret from the surrounding circumstances—as Mendoza did—that the two men were referring to a robbery, particularly given that appellant and Chino were armed, entered the complex together, and ran back to the car with things in their hands. *See id.*; *see also Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (the court may look to evidence before, during, and after the commission of the offense to determine whether there is sufficient evidence to determine whether the appellant is a party). Moreover, the record contains no evidence that appellant did not cooperate in the commission of the crime or tried to stop the crime. *See Johnson v. State*, 421 S.W.3d 893, 898 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The cumulative weight of the incriminating evidence would permit a rational trier of fact to find beyond a reasonable doubt that appellant and Chino entered into a conspiracy to rob the complainant.

### *Murder-in-furtherance-of-the-conspiracy element*

Appellant also contends that there is no evidence the appellant's murder was in furtherance of conspiracy to commit robbery. A jury could have found that the murder was in furtherance of this conspiracy from Mendoza's testimony that she overheard plans for a robbery, that appellant and Chino exited her car armed, that appellant and Chino returned armed, bloody and also with "money, some drugs, and a watch," and Chino's admission to having shot someone. *See Nava v. State*, 379 S.W.3d 396, 406 (Tex. App.—Houston [14th Dist.] 2012); *Ervin v. State*, 333 S.W.3d 187, 201-02 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd).

### *Reasonably-anticipated-the-murder element*

Appellant contends there is no evidence that murder should have been

11

anticipated as a result of carrying out the conspiracy. Mendoza's testimony that appellant had a gun and that Chino was visibly carrying a gun indicates that appellant knew Chino was armed. *Johnson v. State*, 421 S.W.3d 893, 898–99 (Tex. App.—Houston [14th Dist.] 2014, no pet.)(finding evidence sufficient to show that murder should have been anticipated upon evidence that defendant knew his co-conspirator carried a gun during commission of the crime). A reasonable juror could have concluded that the evidence proved beyond a reasonable doubt that appellant should have anticipated the capital murder of the complainant as a result of the carrying out of the conspiracy.

Under the applicable standard of review, we conclude that the evidence is legally sufficient to support appellant's capital-murder conviction as a conspirator under Penal Code section 7.02(b). *See* Tex. Penal Code § 7.02(b); *Canfield,* 429 S.W.3d at 69–70; *Whitmire,* 183 S.W.3d at 526–27; *Turner,* 414 S.W.3d at 797–99. *See also Moore v. State,* 24 S.W.3d 444, 447 (Tex. App.—Texarkana 2000, pet. ref'd) (holding that sufficient evidence supported aggravated-robbery conviction when accused's fellow conspirator shot victim with weapon found in the home and noting that "when an individual decides to steal property from a private residence, he should anticipate that he might be confronted and that his conspirators might react violently to that confrontation."). Having found legally sufficient to support appellant's capital-murder conviction as a conspirator under Penal Code section 7.02(b), we need not address whether the other two alternative theories are supported. *See Hernandez v. State*, 171 S.W.3d 347, 353 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Accordingly, we overrule the appellant's first issue.

## B. Was the accomplice-witness testimony adequately corroborated?

In the second issue, appellant asserts that the evidence is insufficient to

support a conviction because the accomplice-witness testimony is not adequately corroborated.

The Texas Code of Criminal Procedure article 38.14, entitled "Testimony of Accomplice" and commonly known as the accomplice-witness rule, provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2014). The accomplice-witness rule expressly provides that "the corroboration is not sufficient if it merely shows the commission of the offense." *Id.* Appellant argues the record does not contain sufficiently corroborated non-accomplice evidence tending to connect him with either the intended robbery or murder of the complainant.

According to allegations in the indictment, in the course of committing or attempting to commit robbery, one of the conspirators intentionally caused the complainant's death by shooting him with a firearm. A person may be convicted as a party to an offense if the offense is committed by the individual's own conduct, by the conduct of another for which the individual is criminally responsible, or both. *See id.* § 7.01(a).

The trial court instructed the jury on the "the intent to promote or assist" theory of criminal responsibility under Penal Code section 7.02(a)(2) and the conspirator theory of criminal responsibility under Penal Code section 7.02(b). *See id.* § 7.02. Under section 7.02, "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2); *Cerna*, 441 S.W.3d at 864. If, in the attempt to carry out a conspiracy to commit burglary or robbery, capital murder is committed by one of the conspirators, all conspirators are guilty of the capital murder actually committed, though having no intent to

13

commit it, if the capital murder was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *See* Tex. Penal Code § 7.02(b); *Cerna*, 441 S.W.3d at 864.

Each case must be judged on its own facts, and there is no set amount of non-accomplice corroboration evidence required. *Malone,* 253 S.W.3d at 257. The Court of Criminal Appeals has observed that seemingly insignificant circumstances may constitute sufficient evidence of corroboration. *Id.* Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction. *Id.* But the presence of a defendant at the scene of a crime, by itself, is insufficient to corroborate accomplice testimony. *Id.* Simply stated, the evidence must link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence tended to connect the accused to the offense. *Malone*, 253 S.W.3d at 257 (citing *Hernandez v. State*, 939 S.W.2d at 179).

Aside from Mendoza's accomplice-witness testimony, evidence at trial included the following:

- Criminalist Donley's testimony relating to the DNA evidence under the fingernail scrapings and clippings of the complainant, which indicated that appellant could not be excluded as a potential source of the DNA present at the scene of the crime.

- Forensic pathologist John's testimony that evidence of the non-fatal injuries the complainant sustained around the time of his death could have been caused by appellant.

- Phillip McGill's testimony that the complainant had a security system with live feed and would not have opened his door unless he recognized the person at the door, and that the complainant would fight back if he were threatened.

McGill's testimony indicates that the complainant most likely knew the

appellant and provided access to appellant and Chino on that basis. The non-accomplice DNA evidence also tends to connect appellant to the scene of the crime and tends to show that appellant and the complainant were in a physical altercation before or during the course of the complainant's murder. *See Trevino v. State,* 991 S.W.2d 849, 852 (Tex. Crim. App. 1999).

After eliminating the accomplice testimony from consideration and then examining the remaining portions of the record, we conclude that the record contains ample evidence linking appellant to the capital murder of the complainant. Rational jurors reasonably could conclude that this evidence sufficiently tends to connect appellant to this offense. *See Simmons v. State,* 282 S.W.3d 504, 509 (holding that sufficient non-accomplice evidence allowed rational jurors to find that this evidence tends to connect the appellant to the offense). Under the applicable standard of review, we conclude non-accomplice evidence tends to connect appellant to the commission of the crime for which appellant was convicted. *See id.* Accordingly, we overrule the appellant's second issue.

## C. Was there any error in submitting a paragraph authorizing conviction as co-conspirator in the jury charge?

In his third issue, appellant argues that the trial court erred in submitting to the jury "a paragraph authorizing conviction as co-conspirator in the jury charge." In reviewing a complaint of jury-charge error, we first determine whether error occurred and, if we find error, then we evaluate whether the error caused sufficient harm to require reversal. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Even if not pled in the indictment, party liability is an available legal theory if it is supported by the evidence. But a trial court errs in submitting a party-liability instruction if the evidence adduced at trial would not support a jury verdict under the law of parties. *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App.

15

1999). If a defendant requests that the jury charge's application paragraph refer only to those specific party-liability acts that are supported by the evidence, then the defendant is entitled to such a narrowing statement. *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012); *Ferreira v. State*, 514 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2016, no pet.). At trial and on appeal, the only party-liability acts appellant specifically has challenged are those pertaining to the charge's co-conspirator paragraph. *See* Tex. Penal Code 7.02(b). For the same reasons we have found the evidence legally sufficient to support the conviction under Section II.A of this opinion, we find for purposes of our charge-error analysis that the evidence adduced at trial would support the jury verdict. Accordingly, we overrule the appellant's third issue.

### III. CONCLUSION

Appellant's conviction is supported by legally sufficient evidence. Non-accomplice-witness evidence sufficiently corroborates the accomplice-witness testimony. Because the evidence is legally sufficient to convict appellant as a co-conspirator, the trial court did not err in including the paragraph on the co-conspirator theory in the jury charge.

Having found no basis for appellate relief in the issues appellant has raised on appeal, we affirm the trial court's judgment.


/s/ Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.

Do not publish — TEX. R. APP. P. 47.2(b).

16